CITIZEN BAND POTAWATOMI INDIAN TRIBE OF OKLAHOMA, Plaintiff–Appellant,

v.

John E. GREEN, in his official capacity as United States Attorney, Defendant–Appellee.

No. 93–6043.

United States Court of Appeals, Tenth Circuit.

June 7, 1993.

Michael Minnis (David McCullough, Michael Minnis & Associates, P.C., Oklahoma City, OK, with him on the briefs), Michael Minnis & Associates, P.C., Oklahoma City, OK, for plaintiff-appellant.

M. Kent Anderson (Joe Heaton, U.S. Atty., Oklahoma City, OK, with him on the brief), Asst. U.S. Atty., Oklahoma City, OK, for defendant-appellee.

Before ANDERSON, RONEY,* and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Citizen Band Potawatomi Indian Tribe of Oklahoma ("Tribe") appeals a district court order granting summary judgment to John E. Green,[1] the United States Attorney for the Western District of Oklahoma ("U.S. Attorney"). The court held that the importation of video lottery terminals ("VLTs") onto the Tribe's land would violate the Johnson Act, 15 U.S.C. §§ 1171–1178.[2] We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

Under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, Indian gaming activities are divided into three classes, each of which is subject to differing

---

* The Honorable Paul H. Roney, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. John E. Green is substituted for the former United States Attorney for the Western District of Oklahoma, Joe Heaton, pursuant to Fed.R.App.P. 43(c)(1).

2. The Johnson Act also has been cited as the Indian Gambling Act and the Gambling Devices Act of 1962.

degrees of tribal, state, and federal jurisdiction and regulation. *See id.* §§ 2703, 2710. *See generally United States v. Cook,* 922 F.2d 1026, 1033 (2d Cir.1991) (summarizing the regulatory scheme). The IGRA defines class I gaming as "social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as a part of, or in connection with, tribal ceremonies or celebrations." *Id.* § 2703(6). Class II gaming includes bingo and certain card games. *Id.* § 2703(7)(A). Class II gaming does not include banking card games, electronic games of chance, or slot machines. *Id.* § 2703(7)(B). Class III gaming is "all forms of gaming that are not class I gaming or class II gaming." *Id.* § 2703(8). Indian tribes and states may negotiate compacts that authorize class III gaming on Indian land located within the state's boundaries. *Id.* § 2710(d)(3)(A).

Pursuant to the IGRA, the State of Oklahoma and the Tribe entered into the Potawatomi/Oklahoma Gaming Compact of 1992 ("Compact"), which authorizes class III gaming on the Tribe's land. The Compact specifically authorizes the use of VLTs to conduct lotteries, subject, however, to the following condition:

> [T]he Potawatomi shall not import VLTs to conduct a lottery under this Compact until either:
> (1) The United States Attorney for the Western District of Oklahoma issues a letter assuring that VLTs employed pursuant to this compact do not violate the Johnson Act; or
> (2) A federal court of competent jurisdiction shall have declared·that importation of VLTs under this Compact do[es] not violate the Johnson Act . . . .

Oklahoma negotiated for this condition because the U.S. Attorney had informed the state that the importation of VLTs under the Compact could subject both Oklahoma and the Tribe to liability under the Johnson Act, which prohibits the possession or use of any gambling device on Indian land.

After the U.S. Attorney refused to issue a letter assuring that the Johnson Act did not prohibit the importation of VLTs onto the Tribe's land, the Tribe filed this declaratory judgment action in the District Court for the Western District of Oklahoma. On cross-motions for summary judgment, the district court held that the importation of VLTs pursuant to the Compact would violate the Johnson Act. It further held that the IGRA would not waive application of the Johnson Act because gambling devices are not legal in the State of Oklahoma. The court therefore denied the Tribe's motion and granted the U.S. Attorney's motion. This appeal followed.

## II. Standard of Review

We review summary judgment orders de novo, using the same standards the district court applies. *Osgood v. State Farm Mut. Auto Ins. Co.,* 848 F.2d 141, 143 (10th Cir. 1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Because this case presents no factual disputes, we review only the district court's application of the law. We review de novo the district court's rulings with respect to Oklahoma law, *see Salve Regina College v. Russell,* 499 U.S. 225, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), which we ascertain and apply such that we reach the result that would be reached by an Oklahoma court, *see Adams–Arapahoe Sch. Dist. No. 28–J v. GAF Corp.,* 959 F.2d 868, 870 (10th Cir.1992).

## III. Discussion

The Johnson Act prohibits the possession or use of "any gambling device" within Indian country. 15 U.S.C. § 1175. The act defines "gambling device" as, among other things, any

> machine or mechanical device . . . designed and manufactured primarily for use in connection with gambling, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation

of which a person may be entitled to receive, as the result of the application of an element of chance, any money or property....

*Id.* § 1171(a)(2). The definition thus contains two essential elements: (1) the device must be a machine or mechanical device designed primarily for gambling purposes; and (2) the device must operate so that a person may receive or become entitled to receive, as the result of the application of an element of chance, money or property. The Tribe concedes that the VLTs it seeks to import satisfy both elements of this definition.

Although the Johnson Act prohibits the possession or use of VLTs on the Tribe's land, the IGRA provides for limited waiver of Johnson Act liability under certain circumstances. The IGRA expressly provides that § 1175

shall not apply to any gaming conducted under a Tribal–State compact that—

(A) is entered into ... by a State in which gambling devices are legal, and

(B) is in effect.

25 U.S.C. § 2710(d)(6). Because this provision waives Johnson Act liability, it necessarily incorporates the Johnson Act's definition of a gambling device. The district court concluded that Oklahoma is not a state "in which gambling devices are legal." It therefore held that the IGRA would not operate to waive prohibition of the possession or use of VLTs on the Tribe's land. We agree.

Oklahoma clearly prohibits the possession of and dealing in gambling devices. *See* Okla.Stat.Ann. tit. 21, § 985 (West 1983) (possession); *id.* § 984 (dealing). It also prohibits persons from permitting others to install gambling devices on their premises. *Id.* § 983. The Oklahoma statutes define a "gambling device" as

a contrivance designed primarily for gambling purposes which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance.... The fact that the prize is not automatically paid by the device does not affect its character as a gambling device....

*Id.* § 981 (West Supp.1993). Because this definition does not differ materially from the definition provided by the Johnson Act, *see* 15 U.S.C. § 1171(a)(2), we conclude that Oklahoma is not a state "in which gambling devices are legal."

We reject the Tribe's argument that because Oklahoma "regulates, but does not prohibit lotteries or video games," VLTs are legal in Oklahoma. To satisfy the plain language of the IGRA's waiver provision, Oklahoma must legalize devices which meet *both* essential elements of the Johnson Act's definition of gambling device. We find that the two examples cited by the Tribe fail to satisfy both elements of the definition. First, neither of the two narrow exceptions to the broad prohibition of lotteries in Oklahoma contemplates the use of a machine or mechanical device. *See* Okla.Stat.Ann. tit. 21 § 1051. Second, although video games *in general* may be legal, they are not legal when they operate so that a person may receive or become entitled to receive, as the result of the application of an element of chance, money or property. *See id.* §§ 981, 983–985.

Finally, we reject as patent bootstrapping the Tribe's argument that the Compact itself legalizes VLTs for purposes of the IGRA's waiver provision. Congress must have meant that gambling devices be legal absent the Tribal–State compact; otherwise it would not have been necessary to require both that gambling devices be legal, 25 U.S.C. § 2710(d)(6)(A), and that the compact be "in effect," *id.* § 2710(d)(6)(B).

We AFFIRM the district court's conclusion that the Johnson Act would prohibit the importation of VLTs onto the Tribe's land and that the IGRA's waiver provision would not apply because gambling devices are not legal in Oklahoma.