7 F.3d 1370
 Freddy Wayne CHOATE, Appellant,
v.
A.L. LOCKHART; R.H. Smith; Dale Keith; Bob McCool;
Arkansas Department of Correction, Appellees.
Freddy Wayne CHOATE, Appellee,
v.
A.L. LOCKHART; R.H. Smith; Dale Keith; Bob McCool, Appellants,
Arkansas Department of Correction, Defendant.
 Nos. 92-3369, 92-3526.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 15, 1993.
Decided Oct. 26, 1993.
 
 John W. Green, Stuttgart, AR, for appellant.
 David Eberhard, Asst. U.S. Atty., Little Rock, AR, for appellee.
 Before MAGILL, Circuit Judge, LAY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Freddy Wayne Choate (Choate), an inmate at the Arkansas Department of Correction (ADC), brought this action under 42 U.S.C. § 1983 alleging that several ADC employees violated his Eighth Amendment right to be free from cruel and unusual punishment by making him work on a dangerous roofing job. The district court found the defendant prison officials liable and awarded Choate damages for pain and suffering. Choate appeals the district court's denial of punitive and other compensatory damages. The defendants cross-appeal the court's finding of liability under § 1983. Because the evidence fails to establish that the defendants acted with deliberate indifference, we reverse the district court's judgment awarding Choate damages for violations of his Eighth Amendment rights.
 
 I. BACKGROUND
 
 2
 Choate entered the ADC in February 1982. The ADC assigned Choate to a construction crew sometime in 1983 or 1984 because of his background in carpentry. On learning of the assignment, Choate told a prison physician that doctors had implanted an artificial knee cap in his right knee in 1975. He stated that his knee problems should preclude him from working on the crew. Doctors then examined Choate and assigned him a medical classification excusing him from work requiring prolonged lifting, bending, and squatting. As a result, the ADC removed him from the construction crew and reassigned him to "light maintenance work."
 
 
 3
 In 1987, however, Choate was transferred back to a construction unit without notice. None of the defendants were members of the committee that made this assignment. Choate then repeatedly complained to his unit physician that he should be removed from the construction assignment because of his knee problems. He never communicated any of his complaints to the defendants. The unit physician, however, did not take Choate off the construction crew or change his medical classification.
 
 
 4
 In March 1987, Choate's crew was assigned to build a garage at defendant Lockhart's state-owned residence. Lockhart is director of the ADC. Defendants Smith, Keith and McCool were all supervisors on the garage project. On April 24, 1987, the supervisors assigned Choate and other inmates to work on the roof of the garage, which was about twelve feet above the ground. The work involved placing plywood down as roof decking. The work area was sloped at about a forty-five-degree angle. The crew used an electric saw on the roof to cut wood, which created sawdust that made the plywood surface slick. A broom was available, however, to sweep away accumulating sawdust. The crew did not erect scaffolding or place "toe boards" around the roof as safety precautions.
 
 
 5
 While on break on the roof on April 24, Choate asked another inmate to throw him a pack of cigarettes. After a second throw, Choate caught the pack and sat down on the plywood decking. He then began sliding and fell off the roof onto the concrete surface below, sustaining injuries to his feet and ankles.
 
 
 6
 Choate brought suit in March 1989 under § 1983 claiming that defendants violated his Eighth Amendment rights by requiring him to work in unsafe conditions. In March 1991, a magistrate judge held a trial on the issue of the defendants' liability. At the end of the trial, the magistrate judge concluded that the defendants were not liable. In November 1991, however, the district court rejected this recommendation and found for Choate. The court held that the defendants were deliberately indifferent to Choate's welfare and thus liable under § 1983. The court then held a trial on damages and awarded Choate $2500 for past pain and suffering. Choate now appeals the court's failure to award him punitive damages and damages for future pain and suffering and diminution of earning capacity. The defendants cross-appeal the district court's finding of liability.
 
 
 7
 We review the district court's findings of fact[1] under the clearly erroneous standard. See Fed.R.Civ.P. 52(a). The issue of the defendants' liability, however, involves "determining whether the established facts fall within the relevant legal definition." Falls v. Nesbitt, 966 F.2d 375, 377 (8th Cir.1992). Thus, as to whether the defendants violated the Eighth Amendment, we apply a de novo standard of review. See id.
 
 II. DISCUSSION
 
 8
 In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court acknowledged that conditions of a prisoner's confinement can give rise to Eighth Amendment violations. Prison work assignments are conditions of confinement subject to scrutiny under the Eighth Amendment. See, e.g., Bibbs v. Armontrout, 943 F.2d 26, 27 (8th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1212, 117 L.Ed.2d 450 (1992). To prevail on an Eighth Amendment claim, an inmate must prove both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether the defendant officials acted with a sufficiently culpable state of mind. See Wilson v. Seiter, --- U.S. ----, ----, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). In cases challenging prison conditions, the state of mind giving rise to liability is deliberate indifference. Id. at ----, 111 S.Ct. at 2327.
 
 
 9
 Precisely what constitutes deliberate indifference on the part of prison officials has been the subject of some debate.[2] It is at least clear that mere negligence or inadvertence is insufficient to satisfy this standard. Wilson, --- U.S. at ----, 111 S.Ct. at 2328; see Estelle, 429 U.S. at 105, 97 S.Ct. at 291. Indeed, deliberate indifference requires the "unnecessary and wanton infliction of pain." Givens v. Jones, 900 F.2d 1229, 1232 (8th Cir.1990). In the work assignment context, prison officials are deliberately indifferent when they " 'knowingly ... compel convicts to perform physical labor ... which is beyond their strength, or which constitutes a danger to their ... health, or which is unduly painful.' " Ray v. Mabry, 556 F.2d 881, 882 (8th Cir.1977) (per curiam) (quoting Talley v. Stephens, 247 F.Supp. 683, 687 (E.D.Ark.1965)), cited in Johnson v. Clinton, 763 F.2d 326, 328 (8th Cir.1985). Thus, whatever its exact contours, deliberate indifference requires a highly culpable state of mind approaching actual intent.
 
 
 10
 In light of this demanding standard, we hold that the facts here fail as a matter of law to satisfy the subjective component of the Wilson test. We conclude that the defendants' conduct simply did not rise to the level of deliberate indifference. The district court based its finding of deliberate indifference on the confluence of several factors: that the defendants should have known that Choate could not engage in roofing work because he had knee problems; that they required too many inmates to work on the roof at the same time; that they should not have required the inmates to use an electric saw on the roof, which added sawdust to an already slick surface that was at a forty-five-degree angle; that inmates wore leather sole shoes instead of shoes with rubber or crepe soles; that inmate Lamley complained once about the roof being slick and defendant Keith responded by saying "[s]hut up and go back to work"; and that defendants failed to erect toe boards or scaffolding as safety precautions. See Choate v. Lockhart, 779 F.Supp. 987, 993-94 (E.D.Ark.1991). On examining the evidence as to each defendant, however, it becomes clear that none of them possessed the requisite mental state for Eighth Amendment liability.
 
 
 11
 We will first consider defendants Keith and McCool. Keith and McCool were the two immediate supervisors of Choate's construction crew. See id. at 988 n. 2. The first theory under which Keith and McCool could be liable is that they were deliberately indifferent because they made Choate perform work that was inappropriate for his physical condition. Liability on this ground would require imputing knowledge[3] of Choate's condition and the impropriety of his assignment to construction duty to Keith and McCool. The district court found that the defendants "knew or should have known" of Choate's various physical limitations, including the fact that he experienced intense pain, discomfort, weakness and poor balance because of his knee injury. Id. at 993.[4] The court also found that Choate "not only expressed his concerns about his welfare to the physician of the unit, but to his supervisors as well." Id. Thus, the court charged the defendants with the knowledge that Choate had severe knee problems that prevented him from working safely on the project.
 
 
 12
 We hold, however, that this finding is clearly erroneous. First, neither Keith nor McCool chose which inmates would work on the project; rather, other ADC officials assigned the crew to them. Because nothing in the record suggests that project supervisors have a duty to check the medical records of crew members assigned to them, the defendants thus had a right to assume that their crew included only inmates who could do the required work. Moreover, besides the fact that Choate walked with a limp and told Keith that he had a "bad knee," there is simply no evidence that Keith or McCool should have known that Choate had an artificial knee cap; that he could not lift, bend or squat for prolonged periods; that he had a restricted medical classification; that he had made repeated requests to a prison doctor to remove him from construction duty because of his knee problems; or that he experienced intense pain, weakness, and a poor sense of balance while working. Merely that Choate limped and said he had a "bad knee" are not enough to charge Keith and McCool with the knowledge that Choate should not have been working on construction duty or that his knee problems made working on the roof dangerous to him.
 
 
 13
 Indeed, Choate himself testified that he never complained to either Keith or McCool that he could not perform his assigned tasks because of his knee problems. Choate worked without incident or complaint to the defendants about his knee for about five weeks before his accident.[5] The only person he complained to about his assignment during this period was his unit doctor, who is not a defendant here. Thus, neither Keith nor McCool was on notice that they were compelling Choate to "perform physical labor ... [that was] beyond [his] strength, or which constitute[d] a danger to [his] li[fe] or health, or which [wa]s unduly painful." See Ray, 556 F.2d at 882. As far as they knew or had reason to know, Choate had no physical impairments which prevented him from safely undertaking his assigned work on the garage. Thus, that they failed unilaterally to excuse Choate from the project hardly establishes negligence, much less deliberate indifference.
 
 
 14
 Because Keith and McCool had no reason to believe that he was particularly vulnerable to injury because of his knee problems, Choate can only prevail if the defendants were deliberately indifferent to the welfare of all inmates working on the project. This would require a showing that Keith and McCool knew of extreme dangers at the worksite, but ignored these hazards and required the crew to continue working anyway. The evidence, however, falls far short of establishing deliberate indifference as to worksite conditions. Three inmates on the project, including one of Choate's own witnesses, testified that Keith was very safety conscious and that he began many workdays stressing safety to the crew. The supervisors also provided a broom for sweeping away sawdust on the roof. Thus, there is evidence that the supervisors were concerned about the crew's safety.
 
 
 15
 Moreover, the evidence that the district court relied on, although perhaps probative of negligence, does not even approach the requirement that the site supervisors acted with deliberate indifference. In Warren v. Missouri, 995 F.2d 130, 130 (8th Cir.1993), inmate Warren was injured when a board kicked back and struck him while he was operating an industrial table saw at a prison furniture factory. Warren claimed that the defendant prison officials were deliberately indifferent because they failed to equip the saw with " 'anti-kickback fingers' " even though they knew of similar prior injuries to inmates. Id. In finding the prison officials entitled to qualified immunity, the court concluded that Warren's allegations fell "far short of creating a genuine issue of deliberate indifference to a serious issue of work place safety." Id. at 131. Similarly, although the garage here was perhaps not a model of workplace safety, the various safety deficiencies that the district court cited do not establish that Keith and McCool acted with deliberate indifference. Like failing to put a safety device on a saw despite knowledge of the saw's potential danger, failing to erect toe boards on the roof or require inmates to wear rubber-soled shoes, for instance, despite one complaint about slickness does not violate the Constitution. Thus, neither Keith nor McCool had a sufficiently culpable state of mind under Wilson.
 
 
 16
 Next, we consider the liability of defendants Smith and Lockhart. Smith, the overall supervisor of the project, and Lockhart, director of the ADC, both visited the worksite periodically. Neither defendant, however, was involved in the day-to-day progress of the project. As a preliminary matter, it is undisputed that "[s]upervisors are not liable for [E]ighth [A]mendment claims brought under section 1983 on a respondeat superior theory." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir.1989) (citation omitted). Supervisors can incur liability for cruel and unusual punishment in two ways: they can "be liable for their personal involvement in a constitutional violation," Fruit v. Norris, 905 F.2d 1147, 1151 (8th Cir.1990), or " 'when their corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices.' " Howard, 887 F.2d at 137 (quoting Williams v. Willits, 853 F.2d 586, 588 (8th Cir.1988)).
 
 
 17
 Lockhart is not liable under either theory. The only evidence in the record relating to Lockhart is that he is director of the ADC and that he visited the worksite in question, which was on the premises of his state-owned residence. The record is entirely bare, however, of evidence that Lockhart should have known about Choate's suffering on the job, that he assigned Choate to the project, that he had a duty to check Choate's medical records, or that he had any relevant connection to the project at all. In short, Lockhart had no "personal involvement" in the events leading to Choate's injury. That he was the ADC director and that he visited the project and thus possibly observed Choate limping and the condition of the site do not establish that Lockhart acted with deliberate indifference. Moreover, Lockhart did not fail to take "corrective action" for constitutional violations here because there were no predicate violations to correct in the first place.
 
 
 18
 Similarly, as to Smith, the record shows only that Choate never complained to Smith "about anything," that inmate Lamley did not even know who Smith was, and that Smith visited the worksite periodically. Again, there is no evidence suggesting that Smith should have known about the severity of Choate's knee injury or his attempts to get taken off the crew. Smith did not assign Choate to construction duty nor does the record suggest that he had a duty to check Choate's medical history. Even if the worksite itself was Smith's responsibility, we have already discussed why requiring inmates to work under those conditions does not amount to deliberate indifference. Nor can Smith be liable for "corrective inaction" where there were no constitutional violations to correct. Thus, we hold that the evidence also fails to establish that Smith acted with deliberate indifference.
 
 
 19
 The evidence here at most suggests that the defendants were negligent in not taking greater safety precautions at the worksite. Although this may be sufficient for tort liability under state law, it does not rise to the level of a constitutional violation. Forcing an inmate to perform work that is inappropriate for his physical condition, as Ray teaches, may violate the Constitution, but none of the defendants here had anything to do with assigning Choate to construction duty nor can we charge them with knowledge of the severity of his knee problems. The evidence thus fails to satisfy Wilson's rigorous standard as to subjective mental state.
 
 III. CONCLUSION
 
 20
 Because none of the defendants were deliberately indifferent to Choate's welfare, we reverse the district court's judgment finding them liable under § 1983 for violating the Eighth Amendment and affirm defendants' cross-appeal and direct dismissal of the case.[6]
 
 
 
 [1]
 The district court here conducted a de novo review of the magistrate judge's findings pursuant to 28 U.S.C. § 636(b)(1)(B). We in turn review the district court's findings of fact made after the court's de novo review of the magistrate judge's findings under the clearly erroneous standard. See LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988)
 
 
 [2]
 See Young v. Quinlan, 960 F.2d 351, 360 (3d Cir.1992) (noting circuit split over what "quantum of knowledge possessed by a prison official [is] necessary to satisfy the deliberate indifference requirement")
 
 
 [3]
 In Young, 960 F.2d at 360, the Third Circuit explained that there is a circuit split over whether a plaintiff must show actual knowledge of a high risk of harm on the part of prison officials to satisfy the deliberate indifference standard or whether showing that prison officials merely should have known of the risk is sufficient. We need not announce here which position the Eighth Circuit will follow because Choate's claim fails either way as to each defendant
 
 
 [4]
 The district court apparently attributed this knowledge to each of the four defendants. See 779 F.Supp. at 993. Later sections of this opinion explain that defendants Lockhart and Smith did not even have constructive knowledge of the severity of Choate's condition
 
 
 [5]
 Choate did testify that he reported to "sick call" from one to three times in the five-week period before the accident. It is unclear from the record why he reported to sick call on those occasions. The relevant point, however, is that Choate never told the defendants that he was unable to work on those days because of his knee problems
 
 
 [6]
 Because we hold that the defendants are not liable, we need not address Choate's appeal on the damages issues