Daniel Eugene WHITNACK; Isidora Arellano, Jr., Plaintiffs–Appellees,

v.

DOUGLAS COUNTY, a political subdivision of the state of Nebraska; Joseph Vitek, individually and in his capacity as the Director of the Douglas County Department of Corrections; John Roccaforte, Defendants,

E. Fierro, Defendant–Appellant.

No. 92–3902.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1993.

Decided Feb. 22, 1994.

---

Counsel who presented argument on behalf of the appellant was Edwin T. Lowndes of Omaha, NE.

Counsel who presented argument on behalf of the appellees was Frederick D. Franklin of Omaha, NE.

Before MAGILL and HANSEN, Circuit Judges, and HAMILTON,* District Judge.

HANSEN, Circuit Judge.

Daniel Eugene Whitnack and Isidora Arellano, Jr., filed this action under 42 U.S.C. § 1983 against Douglas County and three employees of the Douglas County Correctional Center. The plaintiffs alleged that the defendants deprived them of their constitutional rights by denying them medical care and by confining them in an unclean cell. A jury returned verdicts for defendants Douglas County, Joseph Vitek, and John Roccaforte on all claims; for defendant Ernesto Fierro on the medical-care claims; and for

* The HONORABLE JEAN C. HAMILTON, United States District Judge for Eastern District of Missouri, sitting by designation.

the plaintiffs on their claims concerning the unclean cell. Fierro appeals. We reverse on the ground that the evidence was insufficient as a matter of law to sustain a finding that the plaintiffs were subjected to unlawful conditions of confinement because of the brevity of their confinement in the admittedly unsanitary cell.

## I.

In the fall of 1989, the plaintiffs were cellmates at the Douglas County Correctional Center (DCCC). On September 28, 1989, Arellano was a convicted prisoner awaiting sentencing, and Whitnack was a pretrial detainee awaiting trial. On that day, DCCC personnel noticed a four-inch-by-four-inch hole in the window of the plaintiffs' cell. DCCC personnel searched the plaintiffs and their cell looking for contraband but found none. Defendant Fierro, a correctional officer, was instructed to move the plaintiffs to a different cell. Fierro put the plaintiffs in Cell C–18. According to the plaintiffs' evidence, Cell C–18's toilet was covered with dried feces on both the inside and outside, the sink was covered with hair and vomit, the floor was covered with garbage and rotting food, and the walls were covered with dried human mucus. The plaintiffs complained, but Fierro refused to move them to a different cell and also refused to give them cleaning supplies. A different correctional officer gave the plaintiffs some limited cleaning supplies about three or four hours later, and the next day the plaintiffs received additional cleaning supplies, consisting of a broom, a dust pan, a sponge, a mop, a toilet bowl brush with a concentrated white chemical for toilets, and spray cleaner.

Whitnack and Arellano later sued Fierro; John Roccaforte, another correctional officer; Joseph Vitek, DCCC director; and Douglas County. The plaintiffs alleged that the defendants deprived them of their constitutional rights because the defendants were deliberately indifferent to the plaintiffs' serious medical needs (i.e., a skin problem allegedly caused by insects in Cell C–18) and because defendants kept them in a filthy cell. With the help of court-appointed counsel, the plaintiffs presented their cases to a jury.

The jury returned verdicts for defendants in all respects except the plaintiffs' respective allegations against Fierro concerning the unclean cell. The jury awarded each plaintiff one dollar. The district court denied Fierro's motion for judgment as a matter of law, denied Fierro's motion for new trial, and granted the plaintiffs' request for costs and attorney fees. Fierro appeals.

## II.

Fierro raises three issues. First, he argues that he should receive qualified immunity from liability. Second, he argues that the evidence was insufficient to find a constitutional violation. And third, he argues that the plaintiffs are not entitled to attorney fees. We need discuss only the second issue because our resolution of that issue makes the first and third issues moot.

■ When reviewing a sufficiency-of-the-evidence claim made as part of a motion for judgment as a matter of law in a civil action, we must

> (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) affirm the denial of the motions if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

*Hastings v. Boston Mut. Life Ins. Co.,* 975 F.2d 506, 509 (8th Cir.1992).

Arellano testified at some length about the conditions of Cell C–18. He testified that there was "paper and food and stuff on the floor"; that there was hair, dried "mucus, spit, [and] vomit" in the sink; and that there was "dried human waste" on the toilet seat. (Tr. at 118.) Whitnack likewise testified that there was "a partially-eaten pear" and "a partially-eaten sandwich" on the floor; that there were "cigarette butts and ashes on the desk"; that there was hair, vomit, and spit in the sink; that there was dried human waste on the toilet seat; that there was garbage in the toilet bowl; that there were dried puddles of urine on the floor; and that there was dried "snot" on the wall. (*Id.* at 206–07.)

■ We must determine whether this evidence is sufficient to constitute a deprivation of the plaintiffs' constitutional rights. At the time of Arellano's confinement in the unsanitary cell, he had been convicted of a crime. Thus, his claim is governed by the Eighth Amendment, which prohibits cruel and unusual punishment. *White v. Nix,* 7 F.3d 120, 121 (8th Cir.1993). According to *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), Eighth Amendment claims have an "objective component" (i.e., "was the deprivation sufficiently serious?") and a "subjective component" (i.e., "did the officials act with a sufficiently culpable state of mind?"). *Id.* at ——, 111 S.Ct. at 2324; *see also Choate v. Lockhart,* 7 F.3d 1370, 1373 (8th Cir.1993). *Wilson* also holds that the minimum state of mind required for a constitutional violation is "deliberate indifference." *Wilson,* 501 U.S. at ——–——, 111 S.Ct. at 2326–27; *Choate,* 7 F.3d at 1374. At the time of Whitnack's confinement in the unsanitary cell, he was detained awaiting trial on pending criminal charges. Thus, his claim is governed by the Fourteenth Amendment's Due Process Clause. *Davis v. Hall,* 992 F.2d 151, 152 (8th Cir.1993) (citing *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979)). This court has yet to settle on a clearly binding standard for pretrial detainees. In *Boswell v. Sherburne County,* 849 F.2d 1117 (8th Cir.1988), we said "it is an open question whether the fourteenth amendment provides pretrial detainees with a greater degree of protection." *Id.* at 1121. In *Johnson–El v. Schoemehl,* 878 F.2d 1043 (8th Cir.1989), we said the standard for pretrial detainees "is not yet clearly established" and that "for the purpose of this appeal, we use the deliberate indifference standard." *Id.* at 1055 n. 8. And in *Davis,* we said, "In the absence of a clearly established standard …, we apply the deliberate indifference standard." 992 F.2d at 153. Thus, the legal standard we apply to pretrial detainee Whitnack's conditions-of-confinement claim is identical to the legal standard we apply to the convicted Arellano's conditions-of-confinement claim.[1]

■ Fierro argues that Cell C–18 was not filthy enough, and that the plaintiffs' exposure to the cell was not long enough, to amount to a constitutional violation. We have previously held that punishment is cruel and unusual if it " 'deprive[s] inmates of the minimal civilized measure of life's necessities.' " *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Although the Constitution " 'does not mandate comfortable prisons,' " *Wilson,* 501 U.S. at ——, 111 S.Ct. at 2324 (quoting *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard,* 887 F.2d at 137. Conditions of confinement, however, constitute cruel and unusual punishment "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson,* 501 U.S. at ——, 111 S.Ct. at 2327. "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

---

1. The district court gave the jury an instruction on Whitnack's conditions-of-confinement claim that set forth a different standard than the instruction for Arellano's conditions-of-confinement claim. (*See* App. at 72 n. 1; Tr. at 544–45.) Fierro has not specifically challenged any jury instruction on appeal. He need not challenge a jury instruction, however, to invoke the appropriate legal standard on appeal. A defendant who moves for judgment as a matter of law before a case is submitted to a jury may, on appeal, test the evidence against the legal standard that governed the motion for judgment as a matter of law. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 119–20, 108 S.Ct. 915, 921–22, 99 L.Ed.2d 107 (1988); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 600 n. 26, 105 S.Ct. 2847, 2856 n. 26, 86 L.Ed.2d 467 (1985); *Coca-Cola Bottling Co. v. Hubbard,* 203 F.2d 859, 862 (8th Cir.1953). Fierro moved for judgment as a matter of law at the close of the plaintiffs' evidence (Tr. at 432–33) and again at the close of the defendants' case (*id.* at 528–29). The district court reserved ruling on these motions. (*Id.* at 437, 536.) After the verdicts, Fierro renewed his motion for judgment as a matter of law, and the district court denied the motion in a written order. (App. at 72–74.) Thus, we may consider Fierro's argument that the plaintiffs' evidence was insufficient by reviewing the district court's denial of Fierro's motions for judgment as a matter of law.

The outcome of this case is largely dependent on the very short period of time during which the plaintiffs were confined in Cell C–18 before they were given full and adequate cleaning supplies. "Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'" *Howard,* 887 F.2d at 137 (quoting *Hutto v. Finney,* 437 U.S. 678, 687, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978)). Here, the intolerable conditions lasted not more than 24 hours before the availability of adequate cleaning supplies would make them tolerable. We recently reasoned that a prisoner confined to an allegedly unsanitary cell for eleven days could not prove an Eighth Amendment violation because of the "relative brevity" of his stay, *White,* 7 F.3d at 121, particularly when cleaning supplies were available to him. Other courts have likewise found that certain conditions are not cruel and unusual because the inmate was subjected to the condition for only a short period of time. *See, e.g., Miller v. Glanz,* 948 F.2d 1562, 1569–70 (10th Cir.1991) (plaintiff experienced only "momentary discomfort" when he was handcuffed in "awkward position" for two hours); *Harris v. Fleming,* 839 F.2d 1232, 1235–36 (7th Cir.1988) (plaintiff "experienced considerable unpleasantness" for five days due to "filthy, roach-infested cell"). Where we have recognized constitutional violations with short periods of time, we have done so because the plaintiffs were deprived of an identifiable human need immediately upon being subjected to the inhumane condition. *See Gordon v. Faber,* 973 F.2d 686, 687–88 (8th Cir.1992) (holding that plaintiffs were subjected to cruel and unusual punishment when they were forced to stand outside in winter weather without proper clothing for about two hours).

■ While we have no doubt that reasonably adequate sanitation and the ability to eliminate and dispose of one's bodily wastes without unreasonably risking contamination are basic identifiable human needs of a prisoner protected by the Eighth Amendment, this record contains no showing that either of the plaintiff's attempts to meet his body's needs were interfered with before cleaning supplies were provided to them. Neither does the record show that they made any requests to use alternative toilet facilities which were refused. There is no claim that the cell's plumbing did not work nor that the accumulated waste and garbage in the toilet rendered it inoperable if flushed. Within three or four hours they had been furnished with a spray cleaner (which one of them described as being like "409") which could have been used to clean the toilet seat and sink bowl.

Prisoners in the DCCC are expected to clean their own cells, and to maintain them in a reasonably clean condition. Arellano testified that he initially refused to enter the cell because of its conditions (Tr. at 117), and Whitnack testified that he was "mad" about the conditions (*id.* at 212). We have no doubt that the unsanitary conditions of Cell C–18 were patently offensive to see and to smell, but the plaintiffs cannot carry their burden of proof simply by putting on evidence that they were offended by, or made uncomfortable by, the generally unclean and decidedly unpleasant overall conditions of the cell.

Notwithstanding our conclusion, we must take this opportunity to say that we find the conditions of Cell C–18 on September 28, 1989, to have been deplorable. We can easily conclude that such conditions could cause actionable harm if a prisoner were exposed to them for a much longer period of time. While the length of time a prisoner must endure an unsanitary cell is undoubtedly one factor in the constitutional calculus, the degree of filth endured is surely another, and in our view, the length of time required before a constitutional violation is made out decreases as the level of filthiness endured increases. We decide this case as we do simply because we cannot find a *constitutional* violation where the record fails to show that the conditions were of any proven adverse consequence to the health or other basic human needs of the plaintiffs, given the brevity of their confinement.

In sum, because the plaintiffs have failed to prove the objective component required by *Wilson,* we find that the plaintiffs' evidence was insufficient to prove a deprivation of their constitutional rights.

## III.

We reverse the jury's verdict, vacate the award of attorney fees, and remand the case to the district court for entry of judgment in favor of Fierro.