_____

No. 95-1169
_____

Joseph L. Stephens and Inmate      *
Workers of Arkansas                *
Correctional Industries;           *
Stephen Caster; Jerrol L.          *
White;  Charles Helloms;           *
Reginald O. Davis,                 *
                                   *
         Plaintiffs/Appellees,     *
                                   *
    v.                             *
                                   *
Charlie Johnson, Supervisor,       *
Arkansas Correctional              *
Industries; Larry Norris,          *
Acting Director, Arkansas          *
Department of Correction;          *    Appeals from the United States
Ray Hobbs, Warden,                 *    District Court for the
Wrightsville Unit, Arkansas        *    Eastern District of Arkansas.
Department of Correction,          *
                                   *
         Defendants,               *
                                   *
Jerry Campbell, Administrator,     *
Arkansas Correctional              *
Industries,                        *
                                   *
         Defendant/Appellant.      *

_____

No. 95-1285
_____

Joseph L. Stephens and Inmate      *
Workers of Arkansas                *
Correctional Industries;           *
Stephen Caster; Jerrol L.          *
White,                             *
                                   *
         Plaintiffs/Appellants,*
                                   *
Charles Helloms,                   *
                                   *
         Plaintiff,                *
                                   *
Reginald O. Davis,                 *
                                   *
         Plaintiff/Appellant,      *

```
                                    *
        v.                          *
                                    *
Charlie Johnson, Supervisor,        *
Arkansas Correctional               *
Industries; Larry Norris,           *
Acting Director, Arkansas           *
Department of Correction;           *
Ray Hobbs, Warden,                  *
Wrightsville Unit, Arkansas         *
Department of Correction,           *
                                    *
        Defendants,                 *
                                    *
Jerry Campbell, Administrator,      *
Arkansas Correctional               *
Industries,                         *
                                    *
        Defendant/Appellee.         *
```

Submitted: December 11, 1995

Filed: May 2, 1996

Before FAGG, HEANEY, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Jerry Campbell appeals the district court's entry of judgment on a jury verdict finding him liable for violating inmates' Eighth Amendment rights based on working conditions at a prison warehouse. Because we find that the evidence is insufficient to establish a constitutional violation, we reverse.

**I.**

Jerry Campbell was Chief Administrator of the Arkansas Correctional Industry (ACI), a prison work program directed by the Arkansas Department of Correction (ADC). As part of the ACI work program, some inmates incarcerated at the Wrightsville Unit were assigned to work at the prison warehouse. Inmates assigned to the

warehouse were in charge of moving materials and finished products, loading and unloading delivery trucks, and delivering furniture.

In February 1993, five[1] inmate workers brought suit against the ADC, ACI, Campbell, and other prison officials alleging that unsafe working conditions at the warehouse violated their Eighth Amendment right to be free from cruel and unusual punishment.  After a three-day trial in September 1994, a jury found liability as to Campbell only and awarded each inmate $1 in compensatory damages and $10 in punitive damages.  Campbell appeals the district court's order denying his motion for judgment as a matter of law or, in the alternative, a new trial.  The inmates cross-appeal, contending that the district court erred in not granting injunctive relief and in denying their motion for a new trial on the issue of damages.

## II.

Although Campbell raises three issues on appeal, we find it necessary to rule only on his contention that the evidence is insufficient to support an Eighth Amendment violation.

In reviewing an evidence-insufficiency claim in the context of a motion for judgment as a matter of law, we must:

> (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) affirm the denial of the motions if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

---

[1]One inmate withdrew from the case prior to trial.

_____ v. Douglas County                                               g
Hastings v. Boston Mut. Life Ins. Co.          506, 509 (8th Cir. 1992)).
In _____, 943 F.2d 26, 27 (8th Cir. 1991), _____, 502
U.S. 1110 (1992), we recognized that prison work
to scrutiny under the Eighth Amendment.  To succeed on an Eighth Amendment
         the prisoner must first prove that the conditions challenged were
               `sufficiently serious.'"  _____, 114 S. Ct. 1970,
     (1994) (quoting _____, 501 U.S. 294, 298 (1991)).
            the prisoner must prove that the prison official acted with a
                                      Id. (q       Wilson, 501 U.S. at
                  enging prison conditions, "that state of mind is one
of                                                          Id. (citin
Wilson,   01 U.S. at 302-03).   In other words, under this subjective
                                       official "acted or failed
to  ct despite his knowledge of a substantial risk of serious harm."
_____, 114 S. Ct. at 1981.


     Each of the inmates testified about the working conditions at the
          An examination of their testimony reveals the following main
    aints:  (1) inmates were not issued safety equipment such as har
hats,                                                               e
forkl    had no backup warning beeper; (3) the forklift and trucks had
    anical problems; (4) inmates were lifted up on bare forks of th
forklift                                                            d
to                       retrieve objects; (6) dollies used to move
furniture                                                           t
heavy    iture up stairs and into awkward places; (8) inmates had to
                 from the bathroom sink; (9) the trucks had no first
aid                      not receive safety training.  The inmates
alleged                          the employees at the warehouse about
these conditions.  No written grievances were ever filed, however.

Each inmate also testified that he had received various injuries while working at the warehouse. There was testimony that all of the inmates had injured their backs while lifting furniture. There were also complaints of knee injuries that occurred when the inmates jumped off trucks. The inmates also testified about hand and foot injuries they had received while working at the warehouse. Two of the inmates complained about getting dust in their eyes. Despite this testimony, there were no prison records documenting injuries received at the warehouse.

Even giving the inmates the benefit of all reasonable inferences, we believe that they have failed to establish that Campbell was deliberately indifferent to their health and safety. In the workplace safety context, we have held that mere negligence or inadvertence is insufficient to constitute deliberate indifference. Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993) (citing Wilson, 501 U.S. at 305). See also Estelle v. Gamble, 429 U.S. 97, 104-06 (1976) (stating that deliberate indifference state of mind requires a showing of more than mere negligence).

In Bibbs, an inmate was injured when two of his fingers became entangled in the gears of an inker in a license plate facility. The inmate claimed that his Eighth Amendment rights were violated because the prison guards allegedly knew that the safety guards had been removed and failed to repair the machine. We held that the inmate essentially complained of negligence in the prison officials' failure to repair, and thus we found no constitutional violation. Bibbs, 943 F.2d at 27. Similarly, in Warren v. Missouri, 995 F.2d 130 (8th Cir. 1993), an inmate who injured his wrist while operating a table saw at a prison furniture factory alleged that prison officials were deliberately indifferent by failing to add a safety device to the saw, despite knowledge of similar injuries that had occurred in the past. We held that even assuming that prison officials "had knowledge of the allegedly

similar prior accidents  . . . this showing falls far short of creating a

berate indifference to a serious issue of work place

safety."  ___ at 131.

Likewise, in the instant case, even

of                                                             g

a genuine issue of deliberate indifference to workplace safety.  To convert

ent into conduct violative

of the Eighth Amendment, "more than ordinary lack of due care for the

interests or safety" must be shown.  _____, 475 U.S.

319 (1986).  Simply failing to provide inmates who move furniture wit

steel-toed boots, protective eyewear, and hard hats, for example, does not

ablish a constitutional violation any more than failing to install

safety device on a saw despite                      See _____,

995 F.2d at 131.

from establishing an attitude of deliberate indifference to

ampbell's part, testimony revealed that Campbell had

had discussions with various prison officials regarding back braces, steel-

boots, and a backup warning beeper for the forklift.  In fact, th

inmates                                                       s

installed                          also had a safety rail installed on

an upper storage area

against providing the inmates with steel-toed boots.

In short, the evidence as to the working conditions at the prison

ehouse at most establishes that Campbell was negligent in not takin

greater                                                       h

to       sh a constitutional violation.  See Choate, 7 F.3d at 1376

Because there was no such violation,

award                                                         r

Campbell.

HEANEY, Circuit Judge, dissenting.

I disagree that our precedents lead us to reverse on the basis that the evidence did not permit a reasonable jury to find that Campbell acted with deliberate indifference to the inmate's health and safety. More important, I believe that the Supreme Court's instruction in Farmer v. Brennan, 114 S. Ct. 1970 (1994), propels us to reach the opposite conclusion. Therefore, I respectfully dissent.

I agree with the majority that an inmate must show something more than negligence or inadvertence to successfully challenge prison conditions under the Eighth Amendment. Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993) (citing Wilson v. Seiter, 501 U.S. 294, 305 (1991)). As the Supreme Court recently clarified, Eighth Amendment liability in the context of prison conditions requires a subjective consciousness of the risk on the part of the prison officials. Farmer v. Brennan, 114 S. Ct. 1970 (1994). As the jury found, there is ample evidence in this record that the warehouse conditions were unreasonably dangerous and that Campbell was aware of--and disregarded--the substantial risk of harm to inmates.

The inmates testified at length about unsafe warehouse conditions including: inmates were routinely lifted up on the bare forks of the forklift and moved around the warehouse while in that position; furniture and other heavy items were precariously stacked to the ceiling overhanging high-traffic areas; forklifts and trucks had defects including nonworking brakes, broken lifts, and no warning devices; inmates were required to climb onto high shelves to retrieve objects; inmates were required to move large furniture using dollies too small for the job and without safety straps; inmates were required to lift objects too heavy for their physical ability; lack of safety equipment such as hard hats, protective eyewear, back braces, gloves, and steel-toed boots; inmates had no

access to drinking water except at the bathroom sink; and inmates did not

safety training or instruction on proper lifting techniques.  In

the inmates described an atmosphere in which supervisors

tantly demanded that the inmates work very quickly, make do wit

whatever materials were (or were not) available to assist them, and no

complain.  The evidence also permitted

never filed written grievances because they

officials,                                                                            e

warehouse.                                    testimony, the warehouse job was a

desirable one despite the harsh conditions because it afforded contact with


Campbell, the Chief Administrator of ACI, had an office located five

six feet from the warehouse.  He testified that he regularly walked

gh and made inspections of the warehouse.  As the majority notes

Campbell                                                                              :

providing inmates wit

the forklift, and adding a safety railing to the upper storage area of the

apparently drew inferences

that                                    by the majority, namely, that Campbell

had a subjective awar

could have taken precautions to correct them.


The    jority relies heavily on two of our prior cases to reach the

suming that Campbell was aware of safety problems at

the                                    short of creating a genuine issue of

deliberate indifferen                        _Infra_ at 6.  Neither _____

v. Armont ____, 943 F.2d 26 (8th Cir. 1991), cert. denied          0

(1992), nor _____ Missouri, 995 F.2d 130 (8th Cir. 1993), however, is

r legally equivalent to this case.  _Bibbs_

distinguishable                                                              d

the

record did not contain any evidence that the prison officials intentionally placed prisoners in a dangerous situation. 943 F.2d at 27. In Warren, we affirmed a grant of summary judgment in favor of prison officials where the inmate produced only marginal evidence that the officials might have known of prior similar accidents and no evidence to support a finding that the officials were deliberately indifferent to a serious issue of workplace safety. 995 F.2d at 131. After reviewing the full record in this case, including the transcript of a three-day trial, I fail to understand how this case is controlled by either Bibbs or Warren.

The Supreme Court specifically addressed the concern that the subjective requirement of an Eighth Amendment challenge in this context might permit prison officials to ignore obvious dangers to inmate health and safety. The Court explained:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

Farmer, 114 S. Ct. at 1981 (internal citations omitted). Under the standards announced by the Court, the inmates in this case presented the jury with evidence which, if believed, supported a finding that prison officials were deliberately indifferent to the serious safety risks at the warehouse. Out of the four named defendants, the jury believed that Campbell was liable. Unlike my colleagues, I would respect that finding.

A true copy.

Attest: