**MUAVAEFA`ATASI AE AE JR. and
EUGENE PAUL BAILEY, Plaintiffs,**

v.

**AMERICAN SAMOA GOVERNMENT, et. al., Defendants.**

High Court of American Samoa
Trial Division

CA No. 30-99

June 20, 2000

Before KRUSE, Chief Justice, ATIULAGI, Associate Judge, SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, Katopau T. Ainu'u
For Defendant American Samoa Government and Governor
Tauese P.F. Sunia, Henry W. Kappel, Counsel for the
Office of the Governor, and Toetagata Albert Mailo,
Attorney General

## OPINION AND ORDER

Plaintiffs in this case, Muavaefa'atasi Ae Ae Jr. ("Muavaefa'atasi") and Eugene Paul Bailey ("Bailey"), originally sued numerous owners and operators of poker machines in addition to the governmental defendants still involved. However, subsequent to our denial of plaintiffs' Motion for Summary Judgment, plaintiffs dismissed the suit against all private defendants, leaving only a suit for declaratory relief against the two governmental defendants American Samoa Government and Governor Tauese P.F. Sunia (collectively "ASG"). This raised concerns of whether a justiciable case or controversy remained before the Court, concerns that we requested counsel for the remaining parties to address at a hearing held May 11, 2000.

Also prior to the hearing, we discovered federal law that appeared to forbid any activity relating to poker machines in the territory. Accordingly, we also requested counsel, at the aforementioned hearing, to address this federal preemption question, Counsel have submitted timely briefings on both subjects, which we have considered in rendering the following decision.

## Discussion

### A. Standing

Having dismissed the poker machine owners and operators from the action, plaintiffs effectively dismissed any pecuniary claims against these private parties and instead concentrated on seeking a declaratory judgment against the government. This raised for us the question of whether the plaintiffs, no longer seeking redress for economic losses, still possessed a justiciable case or controversy capable of resolution in this Court.

■ Justiciability comprises a collection of doctrines arising from the "case or controversy" limitation on federal jurisdiction found in Article III, section 2 of the U.S. Constitution, language that is replicated in the statute conferring jurisdiction on the High Court. A.S.C.A. § 3.0208(a). In short, this requirement prevents the court from issuing advisory opinions. *Muskrat v. United States*, 219 U.S. 346, 362 (1911).

Ripeness, or bringing the case too early, is not a bar to the present suit. Poker machines, and the statutes purportedly legalizing them, are presently at work in the territory, and the plaintiffs allege specific injuries as a result. Thus, we are not faced with a case of prospective statutory application and injury. *Cf. Poe v. Uliman*, 367 U.S. 497, 503-04 (1961). Furthermore, the legality of poker machines in the territory is a purely legal issue that would not be further clarified by factual development. *See Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 581 (1985).

■ Standing, on the other hand, presents difficulties for Muavaefa`atasi. While both parties agree on the existence of a justiciable controversy, we have an obligation to ensure that the parties have standing, even if the parties are willing to concede the issue. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

■ Plaintiffs are correct in stating that violation of a statute can constitute a public nuisance *per se*. Standing, however, must still be addressed. The three requirements that plaintiff must demonstrate are: (1) an injury in fact (2) caused by the subject of the suit (3) that can be redressed by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

■ Muavaefa`atasi cannot meet the first requirement. In order to civilly prosecute an action for public nuisance, a plaintiff typically must allege and prove a specific injury beyond that suffered by the general public. *See, e.g., Oppen v. Aetna Ins. Co.*, 485 F.2d 252, 259 (9th Cir. 1973). Muavaefa`atasi has alleged no special injury to himself as a

result of ASG's licensing of poker machines. Nor can Muavaefa`atasi sue in his official capacity for alleged violations of the anti-gambling statute A.S.C.A. § 46.4301. Courts have held that while legislators possess standing to challenge an executive action that nullifies an opportunity to vote, they do not possess standing to challenge the executive's failure to obey a statute. *Goldwater v. Carter*, 617 F.2d 697, 702 (D.C. Cir. 1979) (*en banc*), *vacated on other grounds*, 444 U.S. 996 (1979).

Bailey, on the other hand, has alleged sufficient special injury to maintain the current public nuisance action. The pecuniary harm suffered by Bailey as a result of poker machines differs from that suffered by the general public, satisfying the injury requirement for his suit. *See, e.g., Phila. Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 316 (3d Cir. 1985). Although Bailey is undoubtedly not the only person who has lost significant sums to poker machines, an action may be maintained by one who possesses a grievance shared by many persons so long as it is not common to the public as a whole. *Ariz. Copper Co. v. Gillespie*, 230 U.S. 46, 57 (1913).

Bailey similarly meets the other standing requirements. Poker machines would not be in operation in the territory but for ASG's licensing scheme, thus establishing a causal link between Bailey's injury and ASG's actions. Similarly, a decision by this Court rendering the machines illegal in the territory would likely cause ASG to take actions to prevent any continuing harm.

Accordingly, we dismiss Muavaefa`atasi's cause of action for public nuisance for lack of standing, but continue with Bailey as the sole remaining plaintiff.

B. Legality of Poker Machines in the Territory

The Territory's laws regarding poker machine are a muddle. The general anti-gambling statute, A.S.C.A. § 46.4301, appears to make their presence and use illegal. On the other hand, the Fono has enacted a statutory scheme the purpose of which is to derive revenue from these very same machines. A.S.C.A. § 11.0601 *et. seq.* ASG maintains that the licensing scheme implicitly legalized the machines, whereas Bailey argues that the licensing scheme was merely a device by which the government taxed an illegal activity. These seemingly contradictory provisions thus present a conundrum, the resolution of which would require nuanced interpretations of statutory construction and legislative intent.

Fortunately, we need not consider the effects of these statutes

whatsoever. Rather, we begin with Article IV, Section 3 of the United States Constitution which reads in relevant part, "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . . ." This statement, referred to as the territorial clause, provides Congress with plenary powers to legislate for the territories. *See Nat'l Bank v. County of Yankton*, 101 U.S. 129, 132 (1880). Congress's power to legislate for the territories being derived from the United States Constitution is limited only by that same document, and not by any laws of the territories themselves. *Id.* This legal reality is expressly acknowledged in Art. II, § 1(a) of the Revised Constitution of American Samoa which states, "The Legislature shall have authority to pass legislation with respect to subjects of local application, except that . . . [n]o such legislation may be inconsistent with the laws of the United States applicable in American Samoa." Thus territorial laws which are inconsistent with applicable United States laws violate the Territory's Constitution. *Alamoana Recipe, Inc. v. Am. Samoa Gov't*, 24 A.S.R.2d 156, 157 (Trial Div. 1993); *see also* A.S.C.A. § 1.0201 ("the laws of the United States of America as, by their own force, are in effect in American Samoa . . . [are] in full force and . . . have the effect of law in American Samoa"). Federal preemption is thus established in the territory. Under standard preemption doctrine, federal law may be so pervasive and encompassing with respect to a subject as to occupy the field, leaving no room for state regulation of the same. On the other hand, in many areas federal law provides a groundwork and state (and by analogy, territorial) statutes are given effect if, but only if, they do not conflict with federal statutes. *See, e.g., Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 603-607 (1991).

█ The United States Congress has legislated with respect to the machines at issue in the case. 15 U.S.C.A. § 1171(a)(2). The Johnson Act, 15 U.S.C.A. § 1171 et seq., explicitly makes it unlawful to "manufacture, recondition, repair, sell, transport, possess, or use any gambling device . . . in any Possession of the United States . . . ." 15 U.S.C.A. § 1175(a). The Territory of American Samoa constitutes a possession for purposes of the Johnson Act, 15 U.S.C.A, §§ 1171(a) and (b). It thus appears abundantly clear that these machines are illegal in the territory under federal law.

█ Defendants' arguments do not convince us otherwise. First, whereas states and some possessions can enact laws to exempt themselves from the general rule prohibiting gambling devices, American Samoa cannot. United States Code makes it "unlawful to knowingly transport any gambling device to any place in a State or a possession of the United States from any place outside of such State or possession . . . ." 15 U.S.C.A, § 1172(a). The subsection goes on to specifically exempt only "States" that have legalized gambling from this

prohibition. *Id.* "States," for purposes of the Johnson Act, includes the District of Columbia, Puerto Rico, the Virgin Islands, and Guam. U.S.C.A. § 1171(b). "The term 'possession of the United States' means any possession of the United States which is not named in subsection (b) of this section." U.S.C.A. § 1171(c).. The plain language of the statutory scheme thus explicitly demonstrates that it is *not* the intent of Congress to allow certain possessions, including American Samoa, to enact laws legalizing gambling devices.

Second, the machines at issue are obviously "gambling devices" as defined by section § 1171. No attempt to mischaracterize their operation as one solely dependent on skill can change this fact. *See, e.g., United States v. Digger Merch. Mach.*, 202 F.2d 647, 651 (8th Cir. 1953) (where a substantial element of chance is involved, fact that skill is needed in operating machine will not suffice to take machine out of purview of § 1171); *United States v. 294 Various Gambling Devices*, 718 F. Supp. 1236, 1248 (W.D. Pa. 1989) (video poker machines constitute gambling devices for purposes of § 1171); *United States v. Sixteen Elec. Gambling Devices*, 603 F. Supp. 32, 34 (D. Haw. 1984) (same result). Furthermore, ASG admits that "the operation of poker machines is a form of gambling," belying its argument that one's success in their operation depends wholly upon skill. *See* Stipulation of Facts.

Third, cases cited by ASG are inapplicable to poker machines in the territory. *Iowa Tribe of Indians of Kan. and Neb. v. State of Kansas*, 787 F.2d 1434 (10th Cir. 1986), concerned state prosecution of "pull-tab cards" sold by the Iowa Tribes. The court concluded that these were not gambling devices as defined by § 1171, and that users were thus amenable to prosecution because § 1175 could not apply to preempt state regulation. *Id.* at 1440.

In contrast, the poker machines at issue in this case *are* gambling devices under § 1171. The Johnson Act thus applies and preempts territorial regulation.

ASG similarly misreads *Citizen Band of Potawatomi Indian Tribe of Oklahoma v. Green*, 995 F.2d 179 (10th Cir. 1993). The court did not defer to state law in prohibiting the importation of gambling devices into an Indian Reservation located in Oklahoma. Rather, it considered the status of gambling devices under state law in concluding that federal law, namely the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721, in conjunction with the Johnson Act, operated to forbid the tribe an exception for the machines. *Id.* at 181.

 In the present action, we have a clearly defined case of federal preemption that parallels the case of *United States v. Blackfeet Tribe of Blackfeet Indian Reservation*, 364 F. Supp. 192 (D.C. Mont. 1973). In

that case, the court held that ordinances authorizing gambling and licensing gambling devices, passed by the Blackfeet Tribe on their reservation, were in conflict with § 1175, and were therefore null and void. *Id.* at 194-95. That is precisely the situation we have here in this Court. ASG has licensed poker machines, an action directly in conflict with federal law on the subject. Accordingly, ASG's licensing statute, A.S.C.A. § 11.0601 *et. seq.*, is preempted by the Johnson Act, and declared null and void to the extent of its repugnancy to the latter. In sum, poker machines are illegal in the territory of American Samoa by virtue of federal law, which trumps the Territory's poker machine licensing law, and by virtue of the territory's general anti-gambling statute, A.S.C.A. § 46.4301.

Judgment will enter accordingly.

It is so ordered.