56 F.3d 35
 ESTATE OF Harlan I. ROSENBERG, by its Executor, Max
ROSENBERG, Appellants,
v.
Charles CRANDELL, Rick Stiff, John Doe 1, John Doe 2, John
Doe 3, John Doe 4, John Doe 5, John Doe 6, John
Doe 7, and Various Other John Does to be
Named When Identified, Appellees.
 No. 94-3574SD.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 19, 1995.
Decided May 30, 1995.
 
 Richard Henry Doyle, Des Moines, IA, argued (Michael J. Galligan, Robert J. Burns, and Bruce M. Ford, on the brief), for appellant.
 Bonnie P. Ulrich, Asst. U.S. Atty., Sioux Falls, SD, argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, FAGG and WOLLMAN, Circuit Judges.
 RICHARD S. ARNOLD, Chief Judge.
 
 
 1
 This is a Bivens action brought by the estate of a federal prison inmate claiming damages for deliberate indifference to serious medical needs. There are two named defendants: Charles Crandell, who was at all relevant times Warden of the federal prison in Yankton, South Dakota, and Rick Stiff, the Associate Warden. In addition, there are seven other defendants whose names the plaintiff does not yet know and seeks to determine on discovery. The complaint also named "various other John Does to be named when identified." The District Court granted defendants' motion to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). We affirm in part and reverse in part.
 
 
 2
 In deciding a motion to dismiss for failure to state a claim, both the District Court and this Court must assume as true all facts well pleaded in the complaint. These facts may be summarized as follows: Harlan I. Rosenberg was serving a sentence of 23 months at the federal prison in Yankton, South Dakota. Beginning in March 1991, Harlan (as appellant's brief refers to him) began having a sore throat. The next month, he reported feeling tired and worn down. In June, food began lodging in his throat. He could keep nothing down. Although he reported these symptoms to physicians' assistants at the prison infirmary (John Does 1, 2, and 3 are physicians' assistants), they refused to provide him with any appropriate care other than to schedule an appointment for a barium swallow. After that appointment, Harlan was given Tagamet, medicine for an upset stomach. When he indicated that the Tagamet was not working, his request for further medical attention was ignored.
 
 
 3
 On August 9, 1991, Harlan was finally scheduled for a consultation with an internal-medicine specialist. The physician decided that a test needed to be performed to get a look at the junction between Harlan's esophagus and his stomach. This test, called an esophagogastroduodenoscopy, was not scheduled until 20 days later. Harlan could still neither swallow nor keep food down and was becoming weaker. He asked the defendant physicians' assistants to have the test done earlier by another doctor, but they refused. They also would give him no liquid diet supplements, though he was unable to eat solid food. Defendants told him he could live on four teaspoons of sugar a day.
 
 
 4
 The test was performed on August 29, and on September 4, 1991, Harlan was diagnosed with adenocarcinoma of the esophagus and stomach, an extremely serious and painful form of cancer. Nonetheless, no further treatment was given, and defendants (here the reference is to John Does 4, 5, and 6) refused to give Harlan a shake, forced him to walk to the mess hall, would not release him from work duty, and made him sleep in a top bunk. In addition, one of the defendants gave him solid food to eat during the drive to the Federal Medical Center at Rochester, to which Harlan was finally transferred on September 10, and this same correctional officer also smoked in the car during this trip. Even after Harlan arrived in Rochester, he was not seen by physicians at the Mayo Clinic until nearly four weeks later. Surgery took place on October 10, 1991, but the cancer was terminal, and Harlan was released to the care of his parents. He died on May 6, 1992.
 
 
 5
 As noted, this is a constitutional-tort action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which allows actions against federal officials and employees directly under the Constitution. The claim is that the defendants inflicted cruel and unusual punishment on Harlan in violation of the Eighth Amendment. The standard is well settled and has been for some time. Under Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the question is whether defendants were deliberately indifferent to serious medical needs of the plaintiff. The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.
 
 
 6
 It is well to recall the nature of a motion to dismiss under Rule 12(b)(6). Such motions are to be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. ... [T]he allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).
 
 
 7
 As to John Does 1, 2, and 3, we have no hesitation in holding that the complaint should not have been dismissed. The facts recited above are clearly sufficient (if proved) to establish deliberate indifference to serious medical needs. It may well be that upon trial, or even on motion for summary judgment, defendants can sufficiently explain their actions. But we are not yet at that point. Taking the allegations of the complaint as true, and that is the only record we have before us, John Does 1, 2, and 3 were inexcusably slow in reacting to complaints of serious medical difficulty. By June of 1991, Harlan was unable to keep food down and would vomit when he tried to eat. Yet, he was not scheduled to see an internal-medicine specialist for two months. Thereafter, the defendants allegedly refused to give him liquid food and told him to survive on four teaspoons of sugar a day. It seems to us that this is a classic case of deliberate indifference. By contrast, cases like Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir.1990), where a motion to dismiss was granted, involve only arguably incorrect treatment decisions.
 
 
 8
 The matter is perhaps less clear as to John Does 4, 5, and 6, correctional officers, but we think the solicitude due to a complaint at this early stage of the case leads to the same result with respect to these defendants. Though they knew that Harlan had serious medical difficulties, they refused to make any allowances for him. They required him to work, refused to give him liquid food, and made him walk to the mess hall and to the vehicle which was to take him back to Yankton after his test on August 29. These allegations, though less serious than those against John Does 1, 2, and 3, deserve further examination in the context of this case.
 
 
 9
 The defendants suggest, citing Phelps v. United States, 15 F.3d 735 (8th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 2118, 128 L.Ed.2d 676 (1994), that it is impermissible to name fictitious parties as defendants. In general, this is true, but, as we held in Munz v. Parr, 758 F.2d 1254 (8th Cir.1985), an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery. This is certainly true of John Does 1, 2, and 3, and, we believe, is not clearly untrue of John Does 4, 5, and 6. We agree with defendants, however, that dismissal was proper as to "various other John Does to be named when identified." If discovery identifies other persons who should be named as defendants, it will be simple enough for plaintiff to add them by amendment, after properly securing leave of court.
 
 
 10
 It remains to consider the two named defendants, Crandell and Stiff. As to them, nothing is alleged except the conclusory charge that they were deliberately indifferent to plaintiff's serious medical needs. The complaint does not say that either Crandell or Stiff had anything to do with the decisions affecting plaintiff's medical care, or even that they knew that plaintiff was ultimately diagnosed with cancer and transferred to Rochester. As is the case with actions under 42 U.S.C. Sec. 1983, there is no respondeat superior liability under Bivens. Defendants are liable for their personal acts only. The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability. Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir.1987). We do not think that a bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff, nor even an explicit charge of inadequate training or supervision of subordinates, is sufficient to state a Bivens claim.
 
 
 11
 Accordingly, so much of the judgment of the District Court as dismissed the complaint against defendants Crandell and Stiff, and the group of defendants referred to generally as "various John Does," is affirmed. We also affirm as to John Doe 7, because the complaint alleges nothing that he did. In all other respects, the judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.
 
 
 12
 It is so ordered.