# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2241

_____

Broderick Fourte

*Plaintiff - Appellee*

v.

Faulkner County, Arkansas; Karl Byrd, in his official and individual capacities;
John Randall, in his official and individual capacities; Bobby Brown; Tamara R.
Lumpkin, in her official and individual capacities; Dr. Garry Stewart, in his
official and individual capacities

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 16, 2014
Filed: March 25, 2014

_____

Before GRUENDER, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

This interlocutory appeal tests the line between negligence and deliberate
indifference to an inmate's chronic medical condition. If the inmate is not medically
screened, has his condition monitored but not treated, and has a prescription delayed,
may officials receive qualified immunity? Here, Broderick L. Fourte, Sr. suffered

from high blood pressure. He claims he became partially blind after treatment was delayed while in the Faulkner County, Arkansas jail. He sued the attending physician, Dr. Garry L. Stewart, the jail nurse, Tamara R. Lumpkin, and the County for violating his right against cruel and unusual punishment.[1] Dr. Stewart and Nurse Lumpkin asserted qualified immunity. The district court found factual questions that precluded summary judgment. This court affirms in part, reverses in part, and remands.

I.

On September 25, 2009, Fourte was admitted to the County jail as a pre-trial detainee. He did not receive a medical screening. On October 3, he submitted a medical form complaining of high blood pressure and asking jail staff to call two family members who could get his "meds." Fourte's family was never contacted. The guards began a daily log of his blood pressure on October 5. Nurse Lumpkin's name appears at the top of the log. Dr. Stewart reviewed it weekly. Unless an emergency level of 180/120 is reached, Dr. Stewart's practice is to monitor blood pressure for at least 30 days before prescribing medication.

During October, Fourte's median blood pressure was 150/104, with most readings between 140/95 and 160/110. On October 24 and 30, he submitted the form complaining of vision loss and requesting blood-pressure medicine.[2] On October 30, his blood pressure read 180/121. Nurse Lumpkin gave him a blood-pressure pill. On

---

[1] Fourte also sued three non-medical jail officials, Karl Byrd, John Randall, and Bobby Brown, in their individual capacity. The district court found that Fourte failed to present any evidence that these defendants were aware of his need for medical care. Fourte also testified that they were not personally involved in his treatment. The district court correctly dismissed these claims.

[2] On October 26, Dr. Stewart prescribed Bactrim and Ibuprofen to Fourte for a staph infection.

October 31, he submitted the form and wrote, "Thanks for the blood pressure pill but I need it every day and I am losing my eye. I don't see that good. It's getting bad. I need help please I need help bad." On November 2, Nurse Lumpkin scheduled a visit with Dr. Stewart for November 5. After Dr. Stewart examined him on November 5, he prescribed Hydrochlorothiazide to start on November 7. The medication did not arrive until November 18—after Dr. Stewart issued a second prescription for it. On September 23, 2010, Fourte was diagnosed as legally blind. He presented evidence linking his blindness to lack of blood-pressure medicine while incarcerated.

This court reviews de novo a denial of summary judgment based on qualified immunity. *Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013). "To determine whether [officials] are entitled to qualified immunity, we consider (1) whether the facts alleged, construed in the light most favorable to [to the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Fourte has a well-established right not to have known, objectively serious medical needs disregarded. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the . . . prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs."); *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006) (noting that this court has "repeatedly applied the deliberate indifference standard . . . to pretrial detainee claims").

For a violation, Fourte must show "(1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but

deliberately disregarded those needs." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000), *quoting* *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Deliberate indifference is "more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly*, 205 F.3d at 1096, *quoting* *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Deliberate indifference may be found where "medical care [is] so inappropriate as to evidence intentional maltreatment." *Smith v. Jenkins*, 919 F.2d 90, 92 (8th Cir. 1990).

Fourte argues that defendants' behavior should be analyzed in three stages. He claims defendants deliberately disregarded his medical needs by three failures: (1) "the failure to conduct a medical screening at intake," (2) "the failure to procure and administer blood pressure medication" sufficiently soon after "more than two high blood pressure readings," and (3) "the delay in administering the medication after it was prescribed."

II.

Fourte argues that the failure to provide a medical screening when admitted shows deliberate indifference to his serious medical needs. There is no clearly established right to a general medical screening when admitted to a detention center; admitees have the same right as inmates: not to have known, objectively serious medical needs disregarded. *See* *Krout v. Goemmer*, 583 F.3d 557, 568-69 (8th Cir. 2009) (applying deliberate indifference standard to arrival at detention center); *McRaven v. Sanders*, 577 F.3d 974, 978-79 (8th Cir. 2009) (applying deliberate indifference standard and denying qualified immunity when officials ignored admitee's slurred speech, poor coordination, and admission of substance abuse). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir.

-4-

1997), *quoting* **Camberos v. Branstad**, 73 F.3d 174, 176 (8th Cir. 1995). *See **Nelson v. Correctional Med. Servs.**,* 583 F.3d 522, 529 (8th Cir. 2009) (en banc) (shackling a woman in labor); **Gordon v. Frank**, 454 F.3d 858, 864 (8th Cir. 2006) ("shortness of breath and chest pain" when on high observation); **Pool v. Sebastian Cnty., Ark.**, 418 F.3d 934, 944-45 (8th Cir. 2005) (pregnant inmate bled, passed blood clots, and had difficulty eating and showering).

Fourte fails to show that, when he was admitted, officials knew of or disregarded his medical needs. He points to a "lazy eye," "sweating," and difficulty "getting around" as recognizable signs of a serious medical need. These symptoms are less obvious signs of a serious medical condition than those in *Nelson*, *McRaven*, *Gordon*, or *Pool*. *See **Grayson v. Ross**,* 454 F.3d 802, 810-11 (8th Cir. 2006) (finding defendant entitled to qualified immunity when plaintiff "had no obvious injuries . . . [and did not] exhibit symptoms that were obvious to a layperson" upon intake). When he claimed high blood pressure, officials began logging his daily blood pressure. On the medical-screening claim, Dr. Stewart and Nurse Lumpkin are entitled to qualified immunity.

Whether the County treated Fourte properly when admitted is "inextricably intertwined" with Dr. Stewart and Nurse Lumpkin's qualified immunity defense. *See **White v. McKinley**,* 519 F.3d 806, 815 (8th Cir. 2008). Fourte invokes state regulations requiring the jail to maintain information about an inmate's illness, which he contends requires a medical screening. These regulations do require that "claims of illness or injury should be . . . checked by professional medical personnel." Arkansas Criminal Detention Facility Review Commission, *Jail Standards* 21-22 (1988). Dr. Stewart and Nurse Lumpkin are the only medical professionals alleged to have checked on Fourte's illness or injury. The County is also entitled to summary judgment on the medical-screening claim.

III.

Fourte argues that officials were deliberately indifferent when he was not prescribed medication after several high blood-pressure readings. Fourte must show that several high blood-pressure readings are evidence of a serious medical need, and that by only monitoring his blood pressure, officials deliberately disregarded that need. *Jolly*, 205 F.3d at 1096. Fourte provides the depositions of two physicians who disagreed with Dr. Stewart's protocol. One testified, "When high blood pressure is noted at such a degree over two or so—two or more readings, high blood pressure medicine should be given." The second stated that "a person [with these numbers] should have been on medicine." Fourte argues, "Thus, when the log showed two or more high blood pressure readings, [officials] were required to administer blood pressure medication."

Conflicting expert opinions may create a factual question that this court lacks jurisdiction to review in an interlocutory appeal. *See Pool*, 418 F.3d at 943-44 (finding lack of jurisdiction to review "the district court's determination of evidentiary sufficiency"), *applying Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) (lack of jurisdiction to review whether conflicting expert opinions created a material question of fact). However, this court has jurisdiction to "consider the 'purely legal' issue of whether the facts, taken in the light most favorable to the plaintiffs, support a finding that the state defendants violated . . . clearly established constitutional rights." *Langford v. Norris*, 614 F.3d 445, 455 (8th Cir. 2010), *citing Kahle v. Leonard*, 477 F.3d 544, 549 (8th Cir. 2007), *quoting Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985). As with review of other factual situations, this court has jurisdiction to consider the purely legal issue of whether expert testimony—construed most favorable to the plaintiff—shows the violation of a constitutional right. *See Whitley v. Albers*, 475 U.S. 312, 322-23 (1986) (reviewing expert testimony to conclude that "[a]t most, this evidence, which was controverted by petitioners' experts, establishes that prison officials arguably erred in judgment"

when responding to a prison riot); ***White v. Farrier***, 849 F.2d 322, 327 (8th Cir. 1988) (reviewing expert testimony that differed from doctor's diagnosis).

At best, Fourte's experts show that Dr. Stewart and Nurse Lumpkin should have known they were committing malpractice—but medical malpractice is not deliberate indifference. *See* ***Estelle v. Gamble***, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); ***Dulany***, 132 F.3d at 1242 ("[S]howing that another physician might have ordered different tests and treatment does not show deliberate indifference."); ***Farrier***, 849 F.2d at 327 ("Although White's experts diagnosed White's condition differently . . . this does not establish deliberate indifference. Physicians are entitled to exercise their medical judgment."); ***Noll v. Petrovsky***, 828 F.2d 461, 462 (8th Cir. 1987) ("Noll has only shown . . . that another physician in the same circumstance might have ordered different tests and treatment. This evidence raises questions of medical judgment; it does not show deliberate indifference."). Dr. Stewart and Nurse Lumpkin are entitled to qualified immunity on whether medication should have been prescribed after several high blood-pressure readings.

As for the County, Fourte claims that the custom of "allowing its guards to take inmate blood-pressure readings, record them in a log, and take no further steps" resulted in constitutional violations. This is "inextricably intertwined" with Dr. Stewart and Nurse Lumpkin's supervision of the blood-pressure log. ***White***, 519 F.3d at 815. Separately-taken high readings do not indicate a medical condition "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." ***Coleman***, 114 F.3d at 784, *quoting* ***Camberos***, 73 F.3d at 176. Absent such obvious signs of a serious medical condition, the County did not act improperly in relying on Dr. Stewart's protocol. *See* ***Holden v. Hirner***, 663 F.3d 336, 343 (8th Cir. 2011) ("The prison officials lacked both medical and dental expertise and were entitled to rely upon [nurse's] medical opinion.").

IV.

Fourte argues that officials were deliberately indifferent because the Hydrochlorothiazide arrived only after Dr. Stewart wrote a second prescription for it. Fourte must show that defendants knew he had a serious medical need, and that by the timing of the second prescription, they deliberately disregarded that need. *Jolly*, 205 F.3d at 1096. When Dr. Stewart wrote the first prescription to start on November 7, both Dr. Stewart and Nurse Lumpkin knew of Fourte's previous emergency-level blood pressure. Dr. Stewart acknowledged the need for medication by prescribing Fourte Hydrochlorothiazide. Over the eleven days before Fourte received the medication, the log—reviewed by Dr. Stewart and Nurse Lumpkin—continued to show some high blood-pressure readings. Construing the facts favorable to Fourte, Dr. Stewart and Nurse Lumpkin knew he suffered from a serious medical need.

However, after Fourte did not receive the medication from the first prescription, Dr. Stewart wrote a second prescription. Fourte received the medication a day or two later. He must show that failure to write a second prescription *sooner* deliberately disregarded his need. Between November 7 and November 18, Fourte's median blood pressure was 143/99. He submitted no further complaints about his eyesight or lack of medicine. He identifies no evidence of an intentional delay. At most, Dr. Stewart and Nurse Lumpkin were negligent, but deliberate indifference is "more even than gross negligence." *Jolly*, 205 F.3d at 1096, *quoting **Estate of Rosenberg***, 56 F.3d at 37. *See **Hartsfield v. Colburn***, 491 F.3d 394, 396-98 (8th Cir. 2007) (month-long treatment delay caused, in part, by doctor and nurse miscommunication was "evidence of negligence that does not rise to unconstitutional deliberate indifference"); ***Logan v. Clarke***, 119 F.3d 647, 650 (8th Cir. 1997) ("Although the prison doctors may not have proceeded . . . as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent. The doctors made efforts to cure the problem in a reasonable and sensible

manner."). Fourte has not shown that "the known facts would inform a reasonable actor that his actions violate an established legal standard." *Pool*, 418 F.3d at 944. Dr. Stewart and Nurse Lumpkin are entitled to qualified immunity on whether they should have responded sooner to the missing medication.

Since the County's prescription-delivery system may not be inextricably intertwined with Dr. Stewart and Nurse Lumpkin's treatment of Fourte, this court lacks jurisdiction over the County's appeal. *White*, 519 F.3d at 815.

* * * * * * *

The judgment is reversed as to Dr. Stewart and Nurse Lumpkin on all claims, and as to the County on the medical-screening and delay-in-treatment claims. The appeal of the claim against the County for delay in delivery is dismissed for lack of jurisdiction, and the case remanded for proceedings consistent with this opinion.

_____