# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 16-1801

———————————————

Steven Kulkay,

*Plaintiff - Appellant*

v.

Tom Roy, Commissioner of the Minnesota Department of Corrections; the
Minnesota Department of Corrections; the State of Minnesota; Jeremy Schwartz,
in his official and individual capacities; Alice Remillard, in her official and
individual capacities; John Doe, in his official and individual capacities; Richard
Doe, in his official and individual capacities,

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: November 17, 2016
Filed: February 2, 2017

——————————

Before BENTON and SHEPHERD, Circuit Judges, and EBINGER,[1] District Judge.

——————————

EBINGER, District Judge.

——————————————

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for
the Southern District of Iowa, sitting by designation.

Former inmate Steven Kulkay injured himself while using industrial equipment in the workshop of a Minnesota correctional facility. Kulkay sued the Minnesota Department of Corrections and related parties alleging violations of his civil rights under the Eighth and Fourteenth Amendments, as well as negligence of prison employees. The district court[2] dismissed all of Kulkay's claims. On appeal, Kulkay argues the district court erred in dismissing his Eighth Amendment claims against the individual defendants. We affirm.

I.

We accept as true the material allegations in the complaint and present the facts in the light most favorable to Kulkay. *See Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

In 2013, Kulkay was incarcerated at the Faribault, Minnesota, correctional facility. Officials assigned him to work in the prison's industrial workshop. After one-and-a-half months in the workshop, Kulkay was directed to operate the beam saw. The beam saw is a large, stationary machine that uses computers to automatically move and cut wood beams. After a worker loads a beam onto the saw's work table, sensors detect the beam's size and location. The machine moves the beam into position and circular blades extend to make the desired cuts. The operator is not required to manually start or stop the blade. The beam saw in the Faribault workshop was designed to utilize plastic safety guards to protect the operator from the blades. Kulkay alleges Faribault officials never installed the safety guards while he was an inmate and the parts sat unused in the workshop.

---

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Tony N. Leung, United States Magistrate Judge for the District of Minnesota.

By August 2013, Kulkay had worked in the workshop for two-and-a-half months and with the beam saw for one month. He received instruction on how to operate the saw from an inmate with experience on the saw; he did not receive any formal safety training from officials. Kulkay had never used or seen a beam saw before his assignment to the workshop. On August 5, 2013, Kulkay severed three of his fingers and part of a fourth while operating the saw. Doctors were unable to reattach the severed fingers.

Kulkay brought a 42 U.S.C. § 1983 suit against several institutional and individual defendants for violating his civil rights under the Eighth and Fourteenth Amendments. The defendants include the State of Minnesota; the Minnesota Department of Corrections; Tom Roy, the commissioner of the Department of Corrections; Alice Remillard, the safety director at the Faribault facility; Jeremy Schwartz, the supervising safety officer in charge of the facility's workshop; and two unknown prison employees. Kulkay also brought negligence claims against the State of Minnesota and its Department of Corrections based on vicarious liability.

The defendants jointly filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The magistrate judge issued a Report and Recommendation (R&R) concluding the defendants' motion should be granted. The R&R determined a number of Kulkay's claims were barred by Eleventh Amendment immunity, his Fourteenth Amendment claims could be brought only under the Eighth Amendment, and his Eighth Amendment claims failed because the individual defendants were entitled to qualified immunity. Kulkay objected only to the recommendation that his Eighth Amendment claims against the individual defendants be dismissed. The district court adopted the R&R in its entirety and held Kulkay's complaint failed to state a claim under the Eighth Amendment on the basis of qualified immunity. Kulkay appeals.

II.

This court reviews a Rule 12(b)(6) dismissal based on qualified immunity de novo. *Hager*, 735 F.3d at 1013. We accept the factual allegations in the complaint as true and construe them in favor of the plaintiff. *Id.* We do not, however, "presume the truth of legal conclusions couched as factual allegations." *Id.*; *accord Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

To survive a motion to dismiss for failure to state a claim, "the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The stated claim for relief must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

On appeal, Kulkay argues the district court erred when it dismissed his Eighth Amendment claims on the basis of qualified immunity. The doctrine of qualified immunity generally shields public and government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'"

-4-

*Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)).

To determine whether a public official is entitled to immunity, courts conduct a two-pronged analysis: "whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Hager*, 735 F.3d at 1013. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Because an official is entitled to qualified immunity unless both prongs are satisfied, our analysis will end if either of the two is not met. *See id.* We first consider whether Kulkay has stated a plausible claim for a constitutional violation.

## III.

Kulkay's § 1983 claim alleges the defendants violated the Eighth Amendment's ban on "cruel and unusual punishment." Eighth Amendment protection extends to conditions of incarceration and confinement, including prison work assignments. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Ambrose v. Young*, 474 F.3d 1070, 1075 (8th Cir. 2007). An inmate must make two showings—one objective and one subjective—to successfully state an Eighth Amendment claim. *Ambrose*, 474 F.3d at 1075.

First, the inmate must show the alleged violation is "objectively [and] sufficiently serious." *Farmer*, 511 U.S. at 834 (citation and quotation marks omitted). An alleged violation is "objectively [and] sufficiently serious" when the inmate "is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citation and quotation marks omitted); *accord Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010). We have found this first requirement satisfied in various contexts. *See,*

*e.g.*, *Nelson*, 603 F.3d at 447 (holding an inmate faced a substantial risk of serious harm when officials assigned him to share a room with an inmate known to have sexually assaulted other inmates); *Irving v. Dormire*, 519 F.3d 441, 445, 448–49 (8th Cir. 2008) (finding a sufficient risk of harm when a correctional officer made verbal death threats to an inmate); *Simmons v. Cook*, 154 F.3d 805, 807–08 (8th Cir. 1998) (finding a sufficient risk of harm when officials placed two paraplegic inmates in solitary confinement for thirty-two hours without access to food and medical care).

Second, the inmate must show the defendant official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). This subjective inquiry is "analyzed in light of the specific claim raised." *Irving*, 519 F.3d at 446. In a case challenging the conditions of confinement, the requisite state of mind is "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). This requirement "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).

This court has repeatedly held mere negligence or inadvertence does not rise to the level of deliberate indifference. *See, e.g.*, *Schaub v. VonWald*, 638 F.3d 905, 914–15 (8th Cir. 2011) ("Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." (quoting *Farmer*, 511 U.S. at 835)); *Stephens v. Johnson*, 83 F.3d 198, 200–01 (8th Cir. 1996); *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

In contrast to negligence, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993). "In the prison work assignment context, prison officials are deliberately indifferent when they knowingly compel 'an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful.'" *Ambrose*, 474 F.3d at 1077 (quoting *Sanchez v. Taggart*, 144 F.3d 1154, 1156 (8th Cir. 1998)). The defendant-official's state of mind "must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" *Schaub*, 638 F.3d at 915 (quoting *Lenz v. Wade*, 490 F.3d 991, 993 n.1 (8th Cir. 2007)).

Kulkay argues the alleged conditions that led to his injury—Faribault officials' failure to install the beam saw's safety guards or provide Kulkay with any formal safety training—constitute an objectively serious risk of harm. Kulkay further contends officials had knowledge of this risk but failed to act. Kulkay argues several factors demonstrate officials knew of the risk posed by directing him to operate the beam saw: 1) the manufacturer's safety guards sat unused in the workshop and were not installed on the saw; 2) officials knew other inmates had previously suffered injuries while using workshop equipment; 3) Kulkay did not receive safety training from officials on the proper use of the saw; 4) officials were aware the lack of safety guards on workshop equipment violates state and federal safety regulations; and 5) the primary responsibility of two of the named defendants, Schwartz and Remillard, was to ensure safety in the workshop and the overall facility. Kulkay contends the combination of these factors sets forth a plausible claim Faribault officials knew of the substantial risk of harm posed by the beam saw but assigned Kulkay to operate the saw anyway.

Even if we assume, without deciding, Kulkay's assignment to operate the beam saw with no safety guards and no formal training presents an objective risk of serious harm, Kulkay has not alleged facts sufficient to show Faribault officials were

deliberately indifferent to that risk. A necessary element of deliberate indifference is that the defendant officials had actual knowledge of the substantial risk posed to an inmate's health and safety. *Young*, 508 F.3d at 873. Kulkay's allegations in this regard are lacking. At most, he suggests officials should have realized the safety risks posed by assigning him to the beam saw. But even accepting the allegations as true and construing them in Kulkay's favor, the allegations fail to create the inference that officials had actual knowledge of those safety risks at the time in question.

The absence of certain safety equipment or training and the occurrence of similar injuries does not impute Faribault officials with knowledge of these conditions or the risk of harm they represent. To show deliberate indifference via circumstantial evidence, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *accord Young*, 508 F.3d at 873. Kulkay's allegations are not enough to show officials had actual knowledge of the allegedly dangerous conditions in the workshop or that they willfully overlooked those dangers.

This court has rejected similar Eighth Amendment claims by inmates alleging unsafe workplace conditions based on failures as to evidence of deliberate indifference. In *Bibbs v. Armontrout*, an inmate working at a prison license-plate factory lost portions of his fingers after they became entangled in a machine's gears. 943 F.2d 26, 26 (8th Cir. 1991). The inmate argued his Eighth Amendment rights were violated because the safety guards covering the gears had been removed. *Id.* We found the inmate had not alleged sufficient facts because he "point[ed] to no evidence showing that the prison officials knew that guards were not covering the gears of the [machine] or that they willfully overlooked the condition of the equipment." *Id.* at 27.

Similarly, in *Warren v. Missouri*, an inmate injured his wrist while operating a table saw in a prison furniture factory. 995 F.2d 130, 130 (8th Cir. 1993). The

inmate argued prison officials were deliberately indifferent to his safety because they failed to install safety equipment despite knowing of similar prior injuries. *Id.* We granted qualified immunity for the defendants and found that "[e]ven assuming that one or more defendants had knowledge of the allegedly similar prior accidents[,] . . . this showing falls far short of creating a genuine issue of deliberate indifference to a serious issue of work place safety." *Id.* at 131.

In *Choate v. Lockhart*, an inmate fell off a roof while working as part of a prison construction crew. 7 F.3d at 1373. The district court concluded prison officials violated the inmate's Eighth Amendment rights based on several allegedly unsafe conditions at the worksite. *Id.* On appeal, this court reversed the district court and found the defendant officials did not possess the state of mind necessary for liability under the Eighth Amendment. *Id.* at 1376. We held that "although the [workplace] was perhaps not a model of workplace safety, the various safety deficiencies that the district court cited [did] not establish that [the officials] acted with deliberate indifference." *Id.* at 1375.

This court in *Stephens v. Johnson* also considered whether failing to provide various safety measures and failing to train inmates on safety procedures amounted to an Eighth Amendment violation. 83 F.3d at 199. The inmate-plaintiffs in *Stephens* worked in a prison warehouse and jointly filed Eighth Amendment claims against prison officials for allegedly unsafe working conditions. *Id.* at 199–200. The inmates' complaints were extensive:

> (1) inmates were not issued safety equipment such as hard hats, protective eyewear, back braces, and steel-toed boots; (2) the forklift had no backup warning beeper; (3) the forklift and trucks had mechanical problems; (4) inmates were lifted up on bare forks of the forklift to retrieve materials from high shelves; (5) inmates were required to climb onto high shelves to retrieve objects; (6) dollies used to move furniture did not have safety straps; (7) inmates were required

to lift heavy furniture up stairs and into awkward places; (8) inmates had to obtain drinking water from the bathroom sink; (9) the trucks had no first aid kits; and (10) inmates did not receive safety training.

*Id.* at 200. We held that "even assuming [an official] was aware of safety problems at the warehouse, such a showing falls short of creating a genuine issue of deliberate indifference to workplace safety." *Id.* at 201.

Like in the above cases, the absence of safety equipment or procedures and an awareness of similar injuries fail to show the Faribault officials were deliberately indifferent to the risk of harm posed to Kulkay by the beam saw. Moreover, we join other circuits in concluding that state and federal safety regulations do not establish a standard for Eighth Amendment violations. *See, e.g.*, *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 736 (10th Cir. 2005) (unpublished); *French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1985). The mere existence of state and federal safety regulations does not charge prison officials with knowledge of potentially unsafe conditions in their facility.

The Faribault officials' actions as to potential safety precautions in the workshop at most amount to negligence. But mere negligence is insufficient to state a claim under the Eighth Amendment. Cruel and unusual punishment does not result whenever a prison official may be to blame for an inmate's injuries. In the words of our Supreme Court, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

As discussed above, the two-pronged qualified immunity analysis asks "whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and . . . whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir.

-10-

2013). Taking the alleged facts in Kulkay's favor, Kulkay fails to state a plausible claim for an Eighth Amendment violation because he has not shown the defendant officials were deliberately indifferent to his health or safety. Without a plausible constitutional claim, Kulkay fails the first prong of the qualified immunity analysis. We need not proceed to the second prong to determine whether the alleged constitutional violation was also clearly established at the time in question. *See Ransom v. Grisafe*, 790 F.3d 804, 812 n.4 (8th Cir. 2015) (per curiam) (citing *Pearson*, 555 U.S. at 236; *Fields v. Abbott*, 652 F.3d 886, 894 (8th Cir. 2011)); *cf. Stoner v. Watlingten*, 735 F.3d 799, 803 (8th Cir. 2013) (considering whether a constitutional right was clearly established after concluding the defendant violated the right). We conclude the individual defendants are therefore entitled to qualified immunity.

IV.

Kulkay argues that even if the defendants are entitled to qualified immunity, this court should still reverse and remand to the district court to allow Kulkay the opportunity to conduct discovery. But "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Kulkay is therefore not entitled to discovery before his claims are dismissed. *See Iqbal*, 556 U.S. at 671 (explaining qualified immunity is "both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation'" (quoting *Mitchell*, 472 U.S. at 526)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) ("[By] operating on the assumption that the factual allegations in the complaint are true, [Rule 12(b)(6)] streamlines litigation by dispensing with needless discovery and factfinding.").

-11-

## V.

For the foregoing reasons, Kulkay's claims were properly dismissed. Kulkay has not sufficiently alleged the defendant officials were deliberately indifferent to his health or safety and so has not stated a plausible claim for an Eighth Amendment violation. The officials are thus entitled to qualified immunity. Moreover, because Kulkay fails to state a claim of violation of clearly established law, he is not entitled to discovery before dismissal. The judgment of the district court is affirmed.

_____