# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-1050

———————————————

Ngong Kaw Garang

*Plaintiff - Appellee*

v.

City of Ames; A. Hochberger; T. Fischer; B. McPherson; J. Congdon; Jennifer
Yetmar, Officer; Cole Hippen,[1] Officer

*Defendants - Appellants*

D. Johnsen; T. Harms; Geoff Huff, Officer

*Defendant*s

——————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

——————

Submitted: March 16, 2021
Filed: June 30, 2021

——————

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.

——————

SHEPHERD, Circuit Judge.

---

[1]The district court caption incorrectly identifies Detective Cole Hippen as
Cole Hippin. This caption has been amended to reflect the proper spelling.

After responding to a 911 call reporting an assault and robbery at an Ames, Iowa area apartment complex and conducting a brief investigation, City of Ames Police Officers arrested Ngong Kaw Garang and two other individuals for second degree robbery. During the continuing investigation after Garang's arrest, the Ames Police Department obtained surveillance video that demonstrated that Garang was not in the victim's apartment at the time of the assault and robbery. Prosecutors eventually dropped the charges against Garang, after which he filed this action under 42 U.S.C. § 1983, alleging claims of wrongful arrest and wrongful detention. Defendants moved for summary judgment based on qualified immunity, which the district court denied based on the purported existence of factual disputes in the record. We reverse and remand.

## I.

Early in the morning on October 15, 2017, five City of Ames police officers, Officers Jennifer Yetmar, Ashley Hochberger, Brook McPherson, and Tyler Fischer and Sergeant J. Congdon, responded to a 911 call reporting an assault and robbery at an apartment complex. The caller, Wyatt Graves, reported that two or three black males and two black females had broken into his apartment, assaulted him, and robbed him. When the officers arrived, Officer Yetmar stopped to speak to the occupants of a vehicle exiting the apartment complex's parking lot. One of the female occupants told Officer Yetmar that, while exiting the building, she had shared an elevator with a group of black men and women and that she overheard one of the individuals state that the group needed to leave because the cops were on their way and the individual did not want to go back to jail. The woman recognized one of the men in the elevator as Gony Bijiek. Officer Yetmar then radioed Officers Fischer and McPherson that Bijiek had potential involvement in the incident and that they should keep an eye out for him.

Shortly after receiving this radio transmission, Officer McPherson, who was familiar with Bijiek from prior contacts, observed Bijiek walking toward the entrance of the apartment complex with two women. Officer McPherson observed

a black male, later identified as Garang, lean his head and upper body out of the apartment complex entrance; Officer McPherson noted that the male appeared to be looking for someone. Garang, who was a resident of the apartment building, went back into the building, followed by Bijiek and the two women. Garang entered a stairwell in the lobby while Bijiek and the two women walked toward the elevators. Officers McPherson and Fischer entered the apartment lobby, stopped Bijiek as he walked toward the elevators, and spoke with him. After several minutes, while Officer Fischer was speaking with Bijiek, Officer McPherson observed Garang poke his head back into the lobby from the stairwell door. Officer McPherson noted Garang's apparent interest in the officers' contact with Bijiek and thought that Garang was potentially associated with Bijiek.

Officer McPherson then approached Garang and initiated contact, asking Garang for identification. Garang was unable to provide identification, so Officer McPherson asked for his name to verify his identity through dispatch. Garang provided the name "John Garang," which is his nickname, and did not provide his legal name, Ngong Kaw Garang. Officer McPherson was unable to verify Garang's identity with dispatch based on the name "John Garang." While McPherson was trying to run Garang's name, Garang again entered the stairwell. Officer McPherson called Garang back into the lobby, where Garang eventually provided his legal name, which McPherson was able to verify with dispatch.

Officer Yetmar, who, along with Sergeant Congdon, had spoken with Graves in his apartment upon the officers' arrival at the complex, returned to the lobby. After several minutes, she made contact with another individual, Puok Kong Kang, who had entered the lobby and was wearing clothing consistent with Graves's description of his assailants. While Officers McPherson, Fischer, and Yetmar were in the lobby speaking with Garang, Bijiek, and Kang, Graves entered the lobby. Graves pointed at both Bijiek and Kang before leaving; he did not make any motion toward Garang, who at that time was across the lobby and obscured by the open stairwell door. Graves then exited the lobby.

Roughly ten minutes later, Graves returned to the lobby, accompanied by Sergeant Congdon. Sergeant Congdon testified that Graves identified Garang, Bijiek, and Kang as the men involved in his attack. Officer Hochberger, who was standing with Congdon and Graves, also testified that Graves verbally identified the three men in the lobby as the ones who attacked him. Officer Yetmar, who was questioning Kang, also heard Graves identify Garang, Bijiek, and Kang as the perpetrators. When deposed as part of this case roughly two years later, Graves testified that his memory of the entire evening was hazy and that he did not remember many of the details. While he could not recall identifying the three individuals as his attackers, he acknowledged that he had been informed that he had identified the three men and had no reason to dispute the identification. After Graves's identification, Sergeant Congdon instructed the officers to arrest all three men. Officer McPherson effectuated the arrest of Garang while Officers Yetmar, Fischer, and Hochberger effectuated the arrests of Bijiek and Kang, arresting each for second degree robbery.

The Ames Police Department continued its investigation of the robbery after the arrests of the three suspects. The investigation included conducting follow-up interviews, executing search warrants, and obtaining surveillance videos. Detective Cole Hippen collected surveillance video from the apartment complex on October 18, 2017, three days after the incident, which included video of the lobby and the hallway outside of Graves's apartment for the time period immediately preceding the attack through the time period immediately following the attack. The hallway surveillance video demonstrated that Garang was not in Graves's apartment at the time of the attack. Hippen provided the surveillance video to the Story County Attorney's Office the same day; however, the County Attorney's Office decided not to seek dismissal of Garang's charges based on the surveillance video, believing that Garang could still have been involved in the attack as either an accomplice or an accessory after the fact. Garang, who had been unable to post bail, remained in custody until November 2, 2017, when Bijiek entered into a proffer agreement, which provided additional evidence exculpating Garang. After Bijiek's proffer, the

County Attorney's Office filed a motion to dismiss the charges against Garang, which the court granted, and he was released.

Garang then filed this action, asserting claims of wrongful arrest and detention against the City of Ames, Officers Hochberger, Fischer, McPherson, and Yetmar, Sergeant Congdon, and Detective Hippen.[2] Defendants filed a motion for summary judgment, asserting that the officers were entitled to qualified immunity because they had probable cause to arrest Garang and were not involved in any decision to detain Garang and asserting that the City was entitled to judgment as a matter of law in the absence of any evidence of a violation of Garang's rights. Officers Hochberger, Fischer, and Yetmar filed a second motion for summary judgment asserting that they were entitled to qualified immunity because they were not personally involved in Garang's arrest or detention in any manner. The district court denied both motions, concluding that factual disputes precluded the grant of summary judgment based on qualified immunity.[3] As to the motion for summary judgment filed by all defendants, the district court identified factual disputes related to Graves's identification of his attackers, and as to the motion for summary judgment motion filed by Hochberger, Fischer, and Yetmar, the district court identified factual disputes regarding the information all officers provided to Sergeant

[2]Garang's amended complaint initially named three other individuals, D. Johnsen, T. Harms, and G. Huff, but the parties later stipulated to the voluntary dismissal of the claims against these individuals.

[3]The district court did not independently address the City's argument in its order denying summary judgment or in its motion for reconsideration; nevertheless, the district court denied summary judgment to all defendants, which included the City. The City is included as an appellant in this appeal, but the substance of Appellants' briefing addresses only whether the officers were entitled to qualified immunity. As a municipality, the City is not entitled to qualified immunity. See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 166 (1993) ("[U]nlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983."). Our opinion is limited to consideration of the district court's denial of the summary judgment motions and motion for reconsideration based on qualified immunity.

Congdon, who made the decision to arrest Garang. Defendants filed a motion for reconsideration, which the district court denied, again concluding that factual disputes precluded summary judgment. Defendants now appeal both the denial of the summary judgment motions and the denial of the motion for reconsideration.

## II.

Defendants assert that the district court erroneously denied the first motion for summary judgment and the motion for reconsideration because it erroneously found factual disputes existed; failed to determine whether the officers had arguable probable cause to arrest Garang; and failed to acknowledge that the officers could not be liable for any claims stemming from Garang's post-arrest detention when they had no control over the charges against him after his arrest. Officers Hochberger, Fischer, and Yetmar also assert the district court erroneously denied their second motion for summary judgment and the motion for reconsideration because they were not involved in Garang's arrest or detention and therefore did not violate his constitutional rights.

We review the denial of a motion for summary judgment based on qualified immunity de novo. Nord v. Walsh Cnty., 757 F.3d 734, 738 (8th Cir. 2014). "Summary judgment is appropriate when the evidence viewed in the light most favorable to the nonmoving party presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. (citation omitted). With respect to a motion for reconsideration, "[a] district court has wide discretion over whether to grant a motion for reconsideration of a prior order, and 'we will reverse a denial of a motion for reconsideration only for a clear abuse of discretion.'" SPV-LS, LLC v. Transamerica Life Ins. Co., 912 F.3d 1106, 1111 (8th Cir. 2019) (citations omitted). An abuse of discretion occurs where "the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions." Id. (citation omitted).

In determining whether an officer is entitled to qualified immunity, we apply the familiar two-prong framework: first, "whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right," and second, "whether the right was clearly established at the time of the alleged infraction." Kulkay v. Roy, 847 F.3d 637, 642 (8th Cir. 2017) (citation omitted). "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" Id. (citation omitted). In conducting this analysis, we "may review the legal issues whether conduct violated the Fourth Amendment or clearly established law," but "cannot review whether a factual dispute is genuine." Sok Kong v. City of Burnsville, 960 F.3d 985, 991 (8th Cir. 2020), cert. denied, No. 20-875, 2021 WL 2519406 (U.S. June 21, 2021). We "may review the purely legal question whether a factual dispute is material. A nonmaterial difference in facts does not prevent appellate review." Id. (citation omitted). While this Court ordinarily adopts the plaintiff's version of events, "this [C]ourt does not adopt the plaintiff's version if it is 'blatantly contradicted by the record.'" Id. at 989 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

We begin by considering the motion for summary judgment filed by all defendants. Defendants first assert that the district court erroneously denied the officers qualified immunity on Garang's wrongful arrest claim because arguable probable cause existed to support the arrest and thus they committed no constitutional violation. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" Borgman v. Kedley, 646 F.3d 518, 522-23 (8th Cir. 2011) (citation omitted). Probable cause exists "when the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable person to believe that the [suspect] has committed or is committing an offense,'" and arguable probable cause "exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" Id. at 523.

"Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act." *But it is a bar.* An arrest must be supported by more than a reasonable, articulable suspicion that a person committed a crime. There must be a "fair probability" or a "substantial chance" that the person seized has committed an offense.

Bell v. Neukirch, 979 F.3d 594, 603 (8th Cir. 2020) (alteration in original) (citations omitted).

The record supports the conclusion that the officers had arguable probable cause to arrest Garang for the assault based on Graves's identification of Garang as one of his attackers. Although the district court determined that this was a fact in dispute, upon our review, we conclude that the district court's determination is "blatantly contradicted by the record" and is thus within the scope of our review. See Kong, 960 F.3d at 991. The district court's conclusion that this fact is disputed is premised on the deposition testimony given by Graves roughly two years after the incident stating that he did not remember making an identification and the affidavit Garang submitted in opposition to defendants' summary judgment motion stating that at no time did Graves physically or verbally identify Garang as one of his attackers. However, this record evidence does not create a factual dispute.

First, Graves's deposition testimony does not actually dispute that he made the identification; instead, Graves merely stated that he had no recollection of making the identification but had no reason to challenge the officers' statements that he identified Garang. See To v. U.S. Bancorp, 651 F.3d 888, 892 n.2 (8th Cir. 2011) ("An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur."). And, to the extent that Graves opined, well after the fact, about whether his physical condition as a result of the attack impacted his ability to make a proper identification, he does not deny that he made such an identification. Therefore, this testimony does not create a factual dispute as to whether Graves identified Garang as one of his attackers. Nor does it impact whether officers were entitled to rely on the identification. See Clay

-8-

v. Conlee, 815 F.2d 1164, 1168 (8th Cir. 1987) ("Clearly, law enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication that the information is not reasonably trustworthy or reliable."). The record does not suggest that Graves's identification was either untrustworthy or unreliable. See United States v. Sparks, 265 F.3d 825, 830 (9th Cir. 2001), overruled on other grounds by United States v. Grisel, 488 F.3d 844 (9th Cir. 2007) ("We are not convinced by any of [defendant's] arguments challenging his identification. . . . [The victim's] credibility was not seriously in dispute. This was not an unreliable criminal informant, but a complaining victim who had no apparent reason to lie."). Although Graves had been assaulted, he was still able to make a 911 call and speak with officers about the incident and describe in some detail what occurred. Nothing in the record suggests that the officers should have questioned the reliability of his identification based on Graves's condition following the attack.

Second, while Garang's affidavit avers that Graves at no point identified Garang, this is inconsistent with Garang's prior deposition testimony during which he stated that he could not hear what Graves and Sergeant Congdon were speaking about at the time Graves made the identification, and thus would have been unable to conclusively state whether Graves identified him. "It is well-settled that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." Button v. Dakota, Minn. & E. R.R. Corp., 963 F.3d 824, 830 (8th Cir. 2020) (emphasis omitted). An affidavit is a sham affidavit and should be disregarded "if it contradicts prior testimony or is a 'sudden and unexplained revision of testimony [that] creates an issue of fact where none existed before.'" Id. (alteration in original) (citation omitted). Garang's affidavit is both a sudden and unexplained revision of his prior testimony that he was unable to hear Graves speaking with Sergeant Congdon and creates a factual dispute regarding whether Graves identified his attackers where there otherwise would be no dispute. Therefore, we disregard Garang's affidavit in determining whether there is a genuine issue of material fact regarding Graves's identification.

Apart from Graves's deposition testimony and Garang's affidavit, the record undisputedly demonstrates that Sergeant Congdon and Officers Yetmar and Hochberger all heard or observed Graves identify Garang as one of his attackers. Although the district court determined that there was conflicting testimony about whether Graves made one or two trips to the lobby to identify his attackers and whether he was able to identify Garang in both instances, surveillance video in the record demonstrates that on Graves's first trip to the lobby, Garang was obscured by an open stairwell door, which would have rendered Graves unable to see him. Further, the surveillance video depicts Graves returning to the lobby for a second time, and there is nothing in the record that calls into doubt each of the officers' testimony that Graves affirmatively identified the three men as his attackers.

Given the foregoing, we conclude that the district court's conclusion that it was disputed whether Graves identified Garang as one of his attackers is blatantly contradicted by the record. Considering the totality of the circumstances, primarily Graves's identification of Garang, coupled with Garang's behavior during the encounter—which included showing an unusual amount of interest in the officers' investigation, initially providing a name that could not be verified because it was not Garang's legal name, and attempting to leave the lobby after making contact with Officer McPherson—provided the officers with at least arguable probable cause to arrest Garang. To the extent that Garang asserts the later-obtained surveillance tape and other exculpatory evidence detracts from the officers' claim of arguable probable cause to arrest him, "[a]s probable cause is determined 'at the moment the arrest was made,' any later developed facts are irrelevant to the probable cause analysis for an arrest." Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008) (citation omitted). Accordingly, in the absence of a constitutional violation, the officers are entitled to qualified immunity on the unlawful arrest claim.

Defendants also assert that the district court erroneously denied them qualified immunity on Garang's claim that they violated his rights by subjecting him to continued detention after video surveillance demonstrated that Garang was not in Graves's apartment at the time of the attack. Defendants specifically assert that the

officers did not violate Garang's constitutional rights because they did not have any authority to make any decisions regarding Garang's custody after they arrested him and transferred him to the Story County Jail. In essence, defendants argue that they are not the proper parties because they were not responsible for Garang's continued detention.

Although defendants couch their argument as one related to qualified immunity, it implicates Article III standing concerns, which we are bound to address before addressing the merits of a claim. Wong v. Wells Fargo Bank N.A., 789 F.3d 889, 895 (8th Cir. 2015). "To establish Article III jurisdiction, [Garang] must demonstrate standing to assert *this* claim against *these* defendants." Duit Constr. Co. v. Bennett, 796 F.3d 938, 940 (8th Cir. 2015). "Standing requires a plaintiff: (1) to have suffered a concrete injury in fact, (2) to prove a causal connection between the injury and the defendant's allegedly unlawful conduct, and (3) to show the injury is capable of redressability through a favorable ruling from the courts." Wong, 789 F.3d at 895.

Garang cannot satisfy the causation element of standing because it is clear from the record that he "has sued the wrong parties." Duit Constr. Co., 796 F.3d at 941. Under Iowa law, dismissal of a criminal prosecution can be achieved only by an action of the prosecuting attorney or the district court itself:

> The court, upon its own motion or the application of the prosecuting attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner.

Iowa R. Crim. P. 2.33(1). And the prosecuting attorney who was assigned to Garang's case affirmed that he was responsible for any decision regarding Garang's case, specifically stating in an affidavit in support of defendants' motion for summary judgment that he made the decision not to seek dismissal of the charges against Garang after obtaining the surveillance video from the apartment and that

-11-

this decision was made without the involvement of the Ames Police Department. The prosecuting attorney also specifically stated that all decisions regarding how to proceed with charges, including the ultimate decision to seek dismissal with prejudice of Garang's charges after Bijiek's proffer, were made by the Story County Attorney's Office and that the Ames Police Department and its employees have no authority over the handling of criminal charges or whether suspects should be released from jail. Given this record evidence, Garang lacks standing to pursue this claim against all the defendants. See Duit Constr. Co., 796 F.3d at 941 ("When the injury alleged is the result of actions by some third party, not the defendant[s], the plaintiff cannot satisfy the causation element of the standing inquiry." (citation omitted)). Garang's unlawful detention claim is therefore not within the district court's Article III jurisdiction, and it must be dismissed.

Given the foregoing, the district court erred in denying defendants' motion for summary judgment on Garang's unlawful arrest claim. And because this ruling was premised on legal errors, the district court also abused its discretion in denying the motion for reconsideration. Further, because we conclude that the officers are entitled to qualified immunity on the unlawful arrest claim, we need not address Officers Hochberger, Fischer, and Yetmar's alternative argument that they are entitled to qualified immunity.[4]

---

[4]We note that Officers Hochberger, Fischer, and Yetmar's argument that they were not involved in Garang's arrest does not implicate the same standing considerations as Garang's unlawful detention claim because the district court found a factual dispute regarding their involvement in the decision to arrest Garang, whereas, with respect to the unlawful detention claim, the officers lacked authority as a matter of law to make any decision regarding Garang's continued detention after his arrest.

-12-

## III.

For the foregoing reasons, we reverse and remand to the district court for further proceedings consistent with this opinion.

_____